# CIRCUIT COURT OF THE CITY OF NORFOLK

Hughes,
administrator
of the estate of
Lori Hughes,
deceased

v.

Lake Taylor City Hospital,
a/k/a Hospital Authority of Norfolk, ·
t/a Lake Taylor Hospital, et al.

December 13, 2000

Case No. CL99-1677

BY JUDGE JOHN C. MORRISON, JR.

This matter comes before the Court on Defendants' Motion and Special Plea of Sovereign Immunity with respect to the hospital as an entity and with respect to the individually named employee defendants. This is an action for wrongful death against the defendants. Three of the individual defendants are registered nurses, and the fourth individual defendant is a respiratory therapist. The Amended Motion for Judgment contains two counts: Count I alleges gross negligence as to all defendants, and Count II alleges simple negligence as to all defendants.

Lake Taylor Hospital Authority operates a nursing home. Plaintiff is the administrator of the estate of her daughter, Lori Hughes. Lori had cerebral palsy and mental retardation. Her mother admitted Lori to Lake Taylor Hospital for respite care for the weekend of March 12, 1999. Upon admission Lori was noted to be awake, alert, with a regular heart rate, among other

things. Dr. Angela Mercer accepted Lori Hughes as her patient and thereafter ordered certain care and treatment for Lori to be administered by the health care providers at Lake Taylor. On March 13, 1999, at approximately 11:00 p.m., Lori was found to be bluish in color and not breathing normally. Around 1:00 a.m. on March 14th, a few hours later, Lori was clammy and cool to the touch, pale, had rapid breathing and oxygen saturations at about 82%. On March 14, 1999, Lori Hughes went into cardiac arrest and was administered CPR but ultimately expired.

Plaintiff essentially claims that defendants failed to properly recognize and treat the serious condition of her daughter, Lori Hughes. Plaintiff asserts that defendants failed to promptly notify her doctor of her condition, failed to recognize Lori as "full code" status instead of "Do Not Resuscitate" status, failed to timely transport Lori to an emergency care facility after being ordered to do so by her doctor, and left her uncared for and unattended despite her ongoing distress. Defendants assert that Lake Taylor Hospital is immune from liability in tort based upon the principle that the hospital is a municipal corporation, an organ of the state, and therefore entitled to immunity. Defendants also contend that the individual defendants, three nurses and a respiratory therapist, are entitled to immunity for simple negligence in the treatment of Lori Hughes. Plaintiffs also assert gross negligence against these individual defendants, which will be addressed later in this opinion.

### I. *Sovereign or Governmental Immunity of Lake Taylor Hospital Authority*

A hospital, if it is considered to be an organ of the state, is immune from actions in tort. *Lawhorne v. Harlan*, 214 Va. 405 (1973). A "hospital authority," even though a local government subdivision, is considered a municipal corporation and enjoys tort immunity if it possesses six distinct criteria and performs a "governmental" function. *Richmond v. Metropolitan Authority*, 210 Va. 645 (1970). Those six criteria are the following: (a) creation as a body corporate and politic and as a political subdivision of the Commonwealth; (b) created to serve a public purpose; (c) power to have a common seal, to sue and be sued, to enter into contracts, to acquire, hold and dispose of its revenue, personal and real property; (d) possession of the power of eminent domain; (e) power to borrow money and issue bonds which are tax exempt; (f) management of the corporation vested in a board of directors or a commission. *Richmond Metropolitan*, 210 Va. 645.

In the case at bar, Lake Taylor City Hospital was created by Resolution No. 466 pursuant to Virginia Code § 15.1-1535 *et seq.* on May 24, 1988. Its

name was later changed to the Hospital Authority of Norfolk. The assets of Lake Taylor Hospital and operation and control of the hospital were transferred by the City to the Hospital Authority of Norfolk in July of 1988. Lake Taylor Hospital Authority is in fact a municipal corporation. It meets the six criteria stated above. Plaintiff's counsel does not contest the fact that Lake Taylor Hospital is a municipal corporation. See Plaintiff's Response to Defendants' Plea of Sovereign Immunity at 6. Plaintiff does, however, dispute any conclusion that Lake Taylor was performing a governmental function. As stated above, if the municipal corporation is performing a governmental function(s), then sovereign immunity applies in favor of the hospital. *Carter v. Chesterfield County Health Comm'n*, 259 Va. 588, 527 S.E.2d 783 (2000).

The Supreme Court in *Carter*, held that the Chesterfield County Health Commission's operation of a nursing home was a "governmental" function rather than "proprietary" for immunity purposes. 527 S.E.2d 783. The administrator of the decedent's estate brought a negligence action against the Health Commission alleging that the Commission failed to properly and adequately treat the resident. The Court discussed the difficulty of determining whether something is proprietary or governmental. In finding that the nursing home was performing a governmental function, the Court reasoned that, prior to creating the Commission at issue in *Carter*, the county was required to find that there was a public need for the Commission and that the nursing services were necessary to protect the public welfare. *Id.* Therefore the Court reasoned that, by enacting the resolution creating the Commission, the local government was exercising its police power. *Id.* The Court concluded by saying that "the provision of nursing services by the Commission was not a ministerial act of a proprietary nature but an exercise of the County's police power for the common good and, thus, was governmental in nature" and entitled to immunity. *Id.* at 787.

In this case, the Court holds that Lake Taylor Hospital Authority is performing a governmental function and is entitled to immunity. The nursing home was created to serve the public by providing important health care services to those in need, particularly long-term health care services to the citizens of Norfolk. The Authority is a political subdivision (Code of Virginia § 15.1-1535) and serves an important governmental function involving patient care. *See generally Lawhorne v. Harlan*, 214 Va. 405 (1973) (affirming the trial court's dismissal of a claim against the University of Virginia hospital, its employees, administrators, and a surgical intern); *Holloman v. Chesapeake Hospital Authority*, Record No. 840237, Nov. 16, 1983 (finding that the hospital authority was a governmental entity immune from suit); *Turner v. DePaul Hospital, et al.*, Record No. 89-2352, Circuit Court for the City of

Norfolk, Nov. 7, 1990 (dismissing claim against Medical College of Hampton Roads because of sovereign immunity).

## I. *Immunity of the Individual Hospital Employees as It Applies to the Allegations of Simple Negligence*

Defendants assert that sovereign or governmental immunity applies equally to the individual employees in this case, as they are agents or employees of the Commonwealth.

In *James v. Jane*, the Virginia Supreme Court articulated a four-part test to determine whether a given employee is entitled to immunity for acts of simple negligence. 221 Va. 43 (1980). The four factors to be considered are: (1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion. *Id.* If an employee meets the four factors of this test, the employee cannot be held liable for any acts of simple negligence. If the employee does not meet the four factors, the employee can and will be held liable for acts of simple negligence. The Court also recognized that a state employee may be liable for his conduct while performing work for the state if his conduct is wrongful or the performance is "so negligent as to take him outside the protection of his employment." *Id.*; *see also Messina v. Burden*, 228 Va. 301, 321 S.E.2d 657 (1984).

If the function that a government employee was negligently performing was essential to a governmental objective and the government had a great interest in that function, this weighs heavily in favor of granting immunity. *Lohr v. Larsen*, 246 Va. 81, 431 S.E.2d 642 (1993). If the employee's function has only a marginal influence upon a governmental objective, and the government's interest is slight, this weighs against granting immunity. *Id.* Moreover, if broad discretion on the part of the employee is exercised this also weighs heavily in favor of immunity. *Id.* at 87. A high level of control and direction by the government also weighs in favor of immunity. *Id.* at 88. When a government employee is specially trained to make certain ·discretionary decisions, the control exercised by the government must be necessarily limited in order to make the best use of that person's special skill and judgment. *Id.* In *Lohr*, the Court held that a state-employed physician was entitled to sovereign immunity, whereas, in *James*, the Court held that the three physician defendants employed by the University of Virginia's Medical School were not entitled to immunity. *Lohr*, 246 Va. 81; *James*, 221 Va. 43.

One of the missing yet crucial elements in the *James* case for purposes of immunity was the second prong of the test, the extent of the state's interest and involvement in the function performed by the employees. The Court noted that the Commonwealth's interest and involvement in the treatment of a specific patient by a physician at University Hospital was slight. *James*, 221 Va. at 54. In fact the Court stated that the Commonwealth's interest was that the University operate a good medical school staffed with competent professors. *Id.* The Commonwealth's interest as to a patient's care was the same whether that patient was being treated in a public teaching hospital or a private medical institution. *Id.* at 54-55. Further, the *control* exercised by the Commonwealth over the physicians in the treatment of the patient was also slight. *Id.* The Court felt that, at the point when the physician agrees to treat or operate on a certain patient, "although his employment by the University makes possible the arrangement, the relationship becomes one of doctor and patient, not the Commonwealth of Virginia and patient." *Id.* Similarly in *Lee v. Bourgeois*, the Virginia Supreme Court held that a patient's attending physician, who was a full-time faculty member at university hospital, was not entitled to sovereign immunity. 252 Va. 328, 477 S.E.2d 495 (1996). The Court reasoned that the physician's function and role as the attending physician was to ensure proper treatment of his patients and that his acts regarding patient care were within his professional judgment and were not subject to control by the Commonwealth. *Id.* at 335. Therefore the physician did not meet the four part *James* test. *Id.*

In *Lohr v. Larsen*, the Supreme Court distinguished Dr. Larsen and his functions from the three physicians at issue in *James*. The Court stated that Dr. Larsen's exercise of substantial discretion, while similar to that exercised by the James physicians, was different because Dr. Larsen used that discretion as an integral part of the Commonwealth's health care program. Further, Dr. Larsen was completely controlled by the Commonwealth in that he could not deny any patients treatment. *Lohr*, 246 Va. 81. The Commonwealth's interest and involvement in the doctor's function to provide quality medical care in certain areas for the citizens of this State who are economically unable to get care in the private sector was extremely great. *Id.* Similarly in *Gargiulo v. Ohar*, the Court held that a board-certified physician employed by a state hospital was entitled to immunity. 239 Va. 209, 387 S.E.2d 787 (1990). In discussing the nature of the employee's function, the Court concluded that the alleged negligent acts were performed by an employee as a student involved in a medical research program *instead of a caregiver*. *Id.* Therefore, this function was "essential to achievement of the Commonwealth's goal . . . of

training and maintaining a pool of specialists skilled in a particular discipline." *Id.* at 213.

In the present case, there are three registered nurses and a respiratory therapist at issue. Their primary function is to give proper care and treatment to the patients who are admitted to the nursing home. They are not involved in any type of professional state-sponsored research program as the doctor was in *Gargiulo*, 239 Va. 209. They are not students or interns trying to pursue further training. They are not primarily engaged in teaching nor is their primary function to perform administrative type work for the state as in *Benjamin v. University Internal Medicine Foundation*, 254 Va. 400 (1997) (holding that the medical director of the episode care clinic was primarily engaged in administrative duties and was not performing the duties of an attending physician and was therefore entitled to immunity).

Taking into consideration the four factors articulated in *James*, the Court holds that the defendant nurses and respiratory therapist are not entitled to immunity for acts of simple negligence. The first factor in *James* looks at the nature of the primary function of the particular employee. In the case at bar, the primary function of all individual defendants is to give proper care and treatment to patients. The next factor is the state's interest or involvement in that function. It has been stated that the state's interest in "patient care" is slight. *James*, 221 Va. 43, 54. The State's interest as to a patient's care is the same whether that patient is treated at a public hospital or a private institution. *Id.* at 54-55; *Bourgeois*, 252 Va. 328, 335. The third factor is the amount of control the State has over the employee. Here, the control by the State over these individuals is slight. It is true that they are paid by the hospital and receive no compensation from the patients themselves; however, that factor alone is not determinative and is in fact common. *James*, 221 Va. at 50. If any real control is exercised over these individuals, particularly the nurses, it is by the attending physician. The fourth and final factor is whether the act complained of involved the use of judgment and discretion. It is the judgment and discretion used to perform the particular act in question, not the judgment and discretion used to perform the job generally. *James*; *Puckett v. City of Richmond*, 1988 WL 619092 (Va. Cir. 1988). A high level of discretion weighs in favor of immunity. *Lohr*, 246 Va. at 88. Further, it is important to recognize that many acts involve discretion or judgment but that factor alone cannot be determinative. *James, supra*. Although not necessary for this decision, this case involves two allegations that could possibly be classified as purely ministerial and therefore not entitled to immunity: the fact that the patient was stamped as "DNR" status instead of a "full code" status as requested and the failure to arrange for transport of the patient to an

emergency facility immediately as ordered by the attending physician. Those two acts involved no real judgment or discretion. As for the other more general allegations and in light of the other three factors of the test, the nurses and respiratory therapist are not entitled to sovereign immunity even though they may exercise a level of discretion in their jobs.

The Court holds that the hospital as an entity is entitled to the protection afforded by sovereign immunity. The individual defendants do not meet the four-part test set out in *James*. They are not entitled to immunity and are therefore liable for any acts of simple negligence. In light of the foregoing, the Court does not reach the issue of whether there are sufficient allegations to state a claim for gross negligence. However, even if gross negligence has occurred in this case, the Court finds that punitive damages are not proper in this case. In any event, the proffered evidence herein does not provide a basis for the malicious and intentional actions necessary to support such an award.