## CIRCUIT COURT OF THE CITY OF NORFOLK

Marquis Mann,
an infant,
by his mother
and next friend,
Renita Mann Walton, et al.,

    v.

Sentara Hospitals, Inc.,
t/a Sentara Norfolk General Hospital,
Arthur T. Evans,
EVMS Academic Physicians and
Surgeons Health Services Foundation,
Medical College of Hampton Roads,
d/b/a Eastern Virginia Medical School,
Kathryn Reynes Suarez,
Andrew J. Oh,
Grace Anne Hugart,
and Nancy Raynor

September 11, 2002

Case No. (Law) L98-621

BY JUDGE CHARLES E. POSTON

Today the Court sustains the pleas in bar of the defendants, the Medical College of Hampton Roads (d/b/a EVMS) and Drs. Andrew J. Oh and Kathryn Reynes Suarez, that assert the protection of sovereign immunity. The Court overrules the EVMS Academic Physicians and Surgeons Health Services Foundation's pleas in bar that claim protection of sovereign immunity and charitable immunity. Finally, the Court overrules the Foundation's plea in bar asserting that it cannot be held liable on a theory of *respondeat superior*. In reaching its decision, the Court considered the pleadings, oral argument of counsel, and the parties' other written submissions.

The plaintiff, an infant who was born on June 23, 1996, at Sentara Norfolk General Hospital, suffered brain trauma when he failed to receive sufficient oxygen during birth. Second Amended Motion for Judgment, ¶¶ 1, 25. The infant's mother is also a plaintiff in this action. *Id.* at ¶ 2. Three physicians were involved in the delivery: Drs. Arthur T. Evans, Andrew J. Oh, and Kathryn Reynes Suarez. Dr. Evans was the attending physician while Drs. Oh and Suarez were resident physicians in training placed at Sentara Norfolk General Hospital ("SNGH") as part of an EVMS residency program. *Id.* at ¶¶ 11, 13-14.

The relationship between EVMS and SNGH is governed by an Agreement for Integrated Graduate Medical Education between EVMS and SNGH. See *id.* at ¶¶ 13-14. Under the Agreement, EVMS maintains control and supervision over the medical residents who are placed at SNGH. The Agreement states that the EVMS faculty and instructors "have direct responsibility for clinical supervision of the [residents]" placed at SNGH. Agreement, ¶ IV(D). SNGH "assumes no responsibility for direct clinical supervision" of the interns but is required to report any resident misconduct to EVMS. *Id.*

Under the Agreement, EVMS pays the medical residents their pay checks pursuant to an operating budget proposed by EVMS that must be approved by SNGH, and, ultimately, the final budget must be approved by the Executive Advisory Council.[1] *Transcript*, p. 39; Agreement, ¶ I(A-B).

---

[1] The Executive Advisory Council appears from the Agreement to be a predominately EVMS council because the Agreement states:"*A* representative of [SNGH] shall participate on the Executive Advisory Council of the Council of Chairmen of [EVMS] as a permanent member." *Agreement*, ¶ IV(B) (emphasis

SNGH must pay EVMS the allotted stipend amount approved for residents assigned to SNGH; however, the ultimate financial burden falls on EVMS. The Agreement provides that "[u]nder no circumstances shall [SNGH] be responsible for payments in excess of the amounts specified as [SNGH's] portions in the [SNGH] approved budget." *Agreement,* ¶ I(C). EVMS also bears the administrative responsibility of purchasing and maintaining insurance for the residency program, including workers' compensation, professional liability insurance, and comprehensive automobile liability insurance. *Id.* at ¶ II.

The Agreement explicitly proclaims that no medical resident "is to be considered an employee, servant, or agent of [SNGH] by virtue of the terms or the operation of [the] Agreement." *Agreement,* ¶ III(A). Medical residents "are not entitled to receive or expect any additional compensation or benefit from [SNGH] in connection with the 'Program,' nor may they function as [medical residents] and simultaneously serve in [SNGH] in another capacity." *Id.* at ¶ III(B).

The plaintiff has filed suit against Drs. Evans, Suarez, and Oh on a theory of medical malpractice. The plaintiff has also filed suit against Dr. Evans' employer, EVMS Academic Physicians and Surgeons Health Sciences Foundation ("Foundation"), and EVMS and SNGH, the alleged employers of Drs. Oh and Suarez, on a theory of *respondeat superior.*

Defendant EVMS has filed a plea in bar asserting the defense of sovereign immunity. Defendants Oh and Suarez have also claimed the protection of sovereign immunity as employees of EVMS, which they characterize as a governmental agency. The Foundation has filed three pleas in bar: one claiming charitable immunity, one claiming sovereign immunity, and one claiming it cannot be held liable on a theory of *respondeat superior.*

## I. *Sovereign Immunity of EVMS*

EVMS is a "public bod[y] ... constituted as [a] governmental instrumentalit[y] for the dissemination of education." Virginia Code § 23-14. Under Virginia law, such institutions are unambiguously entitled to sovereign immunity. See e.g., *James v. Jane,* 221 Va. 43, 51 (1980).

The plaintiff contends that "[t]he employees of EVMS are different from the employees of a public instrumentality in that, by their enabling charter,

---

added). The Council "is responsible for developing, based on approved [SNGH] budgets, the stipend and fringe benefit structure applicable" to the interns and residents. *Id.*

the Commonwealth has agreed they are subject to suit." Plaintiffs' Brief in Opposition to Defendant Medical College of Hampton Roads' Plea of Sovereign Immunity, p. 4. While it is true that the enabling charter states that "[EVMS] may sue and be sued, plead and be impleaded, and shall have the power and authority to contract and be contracted with," the Virginia Supreme Court has held that this type of language does not "constitute a waiver of immunity or a consent to suit." 1964 Va. Acts, ch. 471; *Elizabeth River Tunnel Dist. v. Beecher*, 202 Va. 452, 457 (1961). In *Elizabeth River Tunnel Dist.*, the plaintiff sued the District for the personal injuries she suffered while boarding a District bus. *Elizabeth River*, 202 Va. at 453. The trial court concluded "[t]hat the Elizabeth River Tunnel District Act (Acts of Assembly 1942, ch. 130) provides that the District 'may sue and be sued,' and that the State has perhaps thereby consented to suit for the torts of its agents." *Id.* at 456. The Virginia Supreme Court, however, disagreed with this conclusion and stated that "[t]he language 'sue and be sued,' 'plead and be impleaded,' 'contract and be contracted with,' are words affording a procedural right only and do not constitute a waiver of immunity or a consent to suit." *Id.* at 457. The Court then held that the District had been engaging in an essential governmental function while operating the bus "and was thus immune from any action predicated on tort liability." *Id.* In light of *Elizabeth River*, plaintiff's assertion that the Commonwealth consented to suit when enacting EVMS's charter is incorrect.

The plaintiff also alleges that EVMS is not covered by the Virginia Tort Claims Act because the senior claim manager of the Commonwealth's Department of Treasury Division of Risk Management responded to the plaintiff's Notice of Claim, stating that "[i]t is [the Division's] opinion that the Eastern Virginia Medical School is not a State agency for purposes of the Tort Claims Act." Plaintiff's Exhibit 2 of Plaintiffs' Brief in Opposition to Defendant Medical College of Hampton Roads' Plea of Sovereign Immunity. This finding, however, is not binding on the determination of whether EVMS is a governmental agency for purposes of sovereign immunity. Section 23-14 clearly states that EVMS is a "public bod[y] constituted as [a] governmental instrumentalit[y] for the dissemination of education." Virginia Code § 23-14. It is clearly entitled to the protection of sovereign immunity. See e.g., *James v. Jane*, 221 Va. 43, 51 (1980).

During the July 15, 2002, hearing, the plaintiff asserted that a "[m]unicipal corporation [and] a political subdivision are not synonymous with an authority"; therefore, entities, such as EVMS, originally created as

authorities should not receive the protection of sovereign immunity. *Transcript*, p. 62. In *Hughes v. Lake Taylor Hosp.*, however, this Court stated that "[a] 'hospital authority,' even though a local government subdivision, is considered a municipality if it possesses six distinct criteria and performs a 'governmental' function." *Id.*, 54 Va. Cir. 239 (Norfolk, 2000) (citing *Richmond v. Metropolitan Auth.*, 210 Va. 645 (1970)). The criteria that must be met are: "(a) creation as a body corporate and politic and as a political subdivision of the Commonwealth; (b) created to serve a public purpose; (c) power to have a common seal, to sue and be sued, to enter into contracts, to acquire, hold, and dispose of its revenue, personal and real property; (d) possession of the power of eminent domain; (e) power to borrow money and issue bonds which are tax exempt; (f) management of the corporation vested in a board of directors or commission."

EVMS fulfills all the criteria to be a municipality. EVMS was created by an act of the General Assembly in 1964 as "a public body politic and corporate." 1964 Va. Acts, ch. 471, § 1. The purpose of EVMS as set forth by the act is to "to provide for the public health, welfare, convenience, knowledge, benefit, and prosperity of the residents for the Commonwealth of Virginia and such other persons who might be served by the Medical College, and to provide medical education and improved medical care." 1991 Va. Acts, ch. 454, § 3. When created, EVMS had the power to "sue and be sued, plead and be impleaded, and . . . the power and authority to contract and be contracted with." 1964 Va. Acts, ch. 471, § 1. Pursuant to the 1991 Acts of the General Assembly, EVMS continues to have the power "to make contracts or guarantees, incur liabilities, borrow money, or secure obligations of others." 1991 Va. Acts., ch. 454, § 8.1(f). EVMS also has the "power to acquire, hold, and dispose of its revenue, personal and real property." *Hughes*, 54 Va. Cir. at 240; 1991 Va. Acts, ch. 471, §§ 6, 14. The act explicitly grants EVMS the power to acquire property by eminent domain and the "power to borrow money and issue bonds which are tax exempt." *Hughes*, 54 Va. Cir. at 240; 1991 Va. Acts, ch. 454, §§ 6, 11-17.

Pursuant to the act, a Board of Visitors appointed by local city councils and the EVMS Foundation "generally direct[s] the affairs of [EVMS]." 1991 Va. Acts, ch. 454, § 2. Also, EVMS performs essential governmental functions in that it provides for the health and welfare of the Commonwealth by educating future physicians and giving medical treatment to the community. The enabling act explicitly states that EVMS "is a public instrumentality, exercising public and essential governmental functions to

provide for the public health, welfare, convenience, knowledge, benefit, and prosperity of the residents for the Commonwealth of Virginia and . . . to provide medical education and improved medical care." *Id.* at § 3 (emphasis added). In light of these facts, the Court holds that EVMS is a municipality fulfilling an essential governmental function and as such is entitled to governmental immunity. See *Elizabeth River Tunnel Dist. v. Beecher*, 202 Va. 452 (1961); *Hughes*, 54 Va. Cir. 239 (Norfolk, 2000).

## II. *Sovereign Immunity of Drs. Oh and Suarez*

In determining whether Drs. Oh and Suarez receive the protection of sovereign immunity, the Court must first determine whether they were employed by EVMS, a governmental entity, at the time the cause of action arose. The Court holds, as a matter of law, that Drs. Oh and Suarez were employed by EVMS, a governmental entity that enjoys sovereign immunity.

The Virginia Supreme Court applied a four-factor test articulated in *Hadeed v. Medic-24* to determine whether a person is an employee rather than an independent contractor. 237 Va. 277, 288 (1989). The four factors include: "(1) selection and engagement, (2) payment of compensation, (3) power of dismissal, and (4) power to control the work of the individual." *Atkinson v. Sachno*, 261 Va. 278, 284-85 (2001) (quoting *Hadeed*, 237 Va. at 288). The power to control the worker is the determinative factor in deciding whether an individual is an employee or an independent contractor. *Id.* Because this test articulates the factors that give rise to an employer-employee relationship, this test is helpful in determining, between two entities, which entity is a particular individual's employer.

EVMS possessed the power of control over the residents; therefore, EVMS was the residents' employer because the power of control factor determines the identity of the employer. *Atkinson*, 261 Va. at 284 (citing *Hadeed*, 237 Va. at 286). When this cause of action arose, Drs. Oh and Suarez were working at Sentara Norfolk General Hospital ("SNGH") as part of an EVMS residency program. Because Oh and Suarez were medical residents, the manner in which they performed their work was closely controlled. EVMS faculty and instructors had "direct responsibility for clinical supervision of the [residents]" placed at SNGH. Agreement, ¶ IV(D). The Graduate Medical Education Agreement between medical interns and EVMS states that the medical residents were primarily bound by EVMS's rules and regulations and "[a]dditionally . . . [were] bound by the rules, regulations, and bylaws of each of the affiliated hospitals in which [they]

train[ed]." *Graduate Medical Education Agreement.* Nowhere in this agreement exists even an implication that SNGH had an employment relationship with the medical residents. In fact, the Agreement for Integrated Graduate Medical Education explicitly states that no medical resident "is to be considered an employee, servant, or agent of [SNGH] by virtue of the terms or the operation of [the] Agreement." *Agreement*, ¶ III(A).

EVMS, not SNGH, provided the medical residents with paychecks for their services. *Transcript*, p. 39. SNGH "assume[d] no responsibility for direct clinical supervision" of the interns and was required to report any resident misconduct to EVMS. *Agreement*, ¶ IV(D). EVMS, not SNGH, had direct control over the medical interns, and the Agreement explicitly stated that the residents were not employed by SNGH. Clearly, EVMS exercised control over these residents' work. "Whether a person is an independent contractor or an employee is generally a question of fact for a jury; however, when 'the evidence admits of but one conclusion, the question is one of law'." *Atkinson*, 261 Va. at 284 (citing Hadeed, 237 Va. at 288). Even the plaintiff categorized Drs. Oh and Suarez as EVMS employees when she stated that "she was cared for by various employees, servants, and agents of Sentara Hospital, *as well as* by employees or agents of the MCHR/EVMS, *including* defendants Evans, Suarez, and Oh. *Second Amended Motion for Judgment*, ¶ 15. In the case sub judice, the pleadings with their exhibits as amplified by argument of counsel point to a sole conclusion: EVMS employed Drs. Oh and Suarez when this cause of action arose.

The next question, then, is whether Drs. Oh and Suarez are entitled to the protection of sovereign immunity by virtue of their employment with EVMS. *James v. Jane*, 221 Va. 43 (1980), is the landmark case in Virginia's sovereign immunity jurisprudence. In James, the defendant physicians were faculty members at the University of Virginia Medical School. *Id.* at 46. Each defendant received a single salary that compensated him both for his teaching responsibilities and clinical work at the University of Virginia Medical Center. *Id.* The defendants' fixed salary did not depend on the amount of clinical work they performed, and unlike interns and residents, the defendants were not obligated to accept any individual or class of people as patients. *Id.* at 46-47.

The James court treated the defendants as state employees and articulated four factors that determine whether a state employee is entitled to sovereign immunity:

We examine [1] the function the employee was performing and [2] the extent of the state's interest and involvement in that function. [3] Whether the act performed involves the use of judgment and

discretion is a consideration, but it is not always determinate. . . . [4] Of equal importance is the degree of control and direction exercised by the state over the employee whose negligence is involved.

*Id.* at 53 (numbers added).

In *James,* the allegedly negligent act occurred when the defendants treated the plaintiff. *Id.* at 45. The Court discussed that although "[t]he state is . . . interested and concerned that patients who are treated at the University Hospital receive proper medical care," the Commonwealth is equally concerned "for every patient who is treated in any private hospital or by any doctor throughout the Commonwealth." *James v. Jane,* 221 Va. at 54. The Commonwealth's principle interest in the medical school, therefore, was in medical education not patient treatment. *Id.* at 54. The Court further stated that "the control exercised by the state over the physician in the treatment accorded [to his patients]" is slight. *Id.* The treatment performed by the defendants clearly involved the exercise of judgment and discretion, but in light of all the other factors, the Virginia Supreme Court held that the defendants were not entitled to sovereign immunity to protect them from their allegedly negligent acts against the plaintiff. *Id.* at 54.

The *James* Court distinguished its holding from an earlier Virginia Supreme Court case, *Lawhorne v. Harlan,* 214 Va. 405 (1973), in which the Court held that a surgical intern at the University of Virginia Hospital was entitled to sovereign immunity. *Id.* at 53; see *Lawhorne,* 214 Va. 405 (1973) (overruled in part by *First Virginia Bank-Colonial v. Baker,* 225 Va. 72 (1983), on different grounds dealing with respondeat superior). The Court explained that the intern was afforded immunity because, unlike the James defendants, "[t]he intern . . . was, because of his inexperience, closely controlled, supervised, and directed by his employer." *Id.* at 54. The Commonwealth also had a particular interest in the intern's activities because the intern was only allowed to practice medicine under the supervision of a licensed physician. *James v. Jane,* 221 Va. at 54.

The *James* analysis has since become the standard mechanism for resolving the sovereign immunity claims of state and local governmental employees and has been employed in a large number of subsequent cases. See, e.g., *Lentz v. Morris,* 236 Va. 78 (1988) (sovereign immunity afforded to a public high school employee); *Messina v. Burden,* 228 Va. 301 (1984) (sovereign immunity afforded to a state college employee and county employee); *Bowers v. Commonwealth,* 225 Va. 245 (1983) (highway engineer employed by the Commonwealth entitled to sovereign immunity).

*Gargiulo v. Ohar*, 239 Va. 209 (1990), involved a board-certified physician who was a fellow in a post-doctoral education program at the Medical College of Virginia. *Id.* at 210. The physician had "served until 1979 as an intern at that facility and, until 1981, as a resident at MCV." *Id.* at 211. Then, "[a]s a licensed physician, board-certified in internal medicine, she was awarded a six year fellowship." *Id.* The Court, applying the *James* test, ruled that the physician's primary function "was to assist as an employee and student in the conduct of a basic medical research program." *Id.* at 213. The physician's function as a student was considered by the Court to be "essential to the achievement of the Commonwealth's goal, one undertaken in the public interest, of training and maintaining a pool of specialists skilled in a particular discipline." *Id.* Even though the physician's decisions were subject to review by the faculty and medical staff, the physician exercised discretion in examining and administering medication to the patients. *Gargiulo*, 239 Va. at 214. Because she was functioning as a student under close supervision, the physician was protected by sovereign immunity. *Id.*

The *James* factors compel the conclusion that the defendants Drs. Oh and Suarez are protected by sovereign immunity. First, the defendants were residents at EVMS. They were obviously less experienced than the physician in Gargiulo who enjoyed sovereign immunity. Because the defendants were learning the practice of medicine under the tutelage of experienced physicians when this cause of action arose, the defendants functioned as students. Second, the Commonwealth had a strong interest in the function the defendants were performing. Drs. Oh. and Suarez were students in an educational program of EVMS, a governmental instrumentality for the dissemination of education, and certainly the Commonwealth has a strong interest in medical education, especially in one of its own instrumentalities. *See e.g., Gargiulo*, 239 Va. at 213.

The third *James* factor, the extent to which the employee's job involves the exercise of judgment and discretion, clearly urges the award of sovereign immunity. Even the *James* court, which denied the defendants sovereign immunity, implicitly acknowledged that the work of physicians demands the exercise of judgment and discretion. *Id.* at 53. The complex and technical nature of medicine makes the exercise of judgment and discretion by its practitioners both inevitable and ubiquitous.

The final James factor, the extent to which an employee is controlled by the Commonwealth, favors granting Drs. Oh and Suarez sovereign immunity. Because Drs. Oh and Suarez were residents, they could practice only under

the supervision of faculty members and attending physicians and were subject to greater control than the board certified defendant in Gargiulo. EVMS faculty and instructors had "direct responsibility for clinical supervision of the [defendants]." Agreement, ¶ IV(D). For these reasons, the plea of sovereign immunity filed by Drs. Oh and Suarez is sustained, and the action is dismissed as to them.

## III. *Sovereign Immunity of the Foundation*

As discussed above, EVMS is a governmental instrumentality and is, therefore, entitled to sovereign immunity. There is no case in which the Virginia Supreme Court has extended sovereign immunity to an agent of an immune entity other than the Commonwealth. The principles underlying Virginia sovereign immunity jurisprudence, however, clearly imply that agents of immune entities are entitled to sovereign immunity when they satisfy the four-part test specified in *James v. Jane*.

In *Messina v. Burden*, 228 Va. 301 (1984), the Virginia Supreme Court held that sovereign immunity may extend to employees of immune governmental entities other than the Commonwealth. *Id.* at 313. To determine whether an employee of a governmental entity other than the Commonwealth is entitled to immunity, courts apply the four-factor *James* test, substituting the name of the relevant governmental entity for the word "state." *Id.* For example, instead of analyzing "the degree of control and direction exercised by the state over the employee" and the Court would analyze "the degree of control exercised by the governmental entity over the employee."

In *Atkinson v. Sachno*, 261 Va. 278 (2001), the Virginia Supreme Court said in dicta that "some employees and agents of the Commonwealth may be entitled to the protection of sovereign immunity." *Id.* at 284.[2] Although *James* did not explicitly indicate that agents of government entities other than the Commonwealth are eligible for sovereign immunity protection, agents of the Commonwealth are also eligible. *Atkinson* never suggests that the Commonwealth's agents are automatically entitled to sovereign immunity. In fact, to extend automatically such immunity to the Commonwealth's agents would afford them greater protection than state employees despite the fact that there is no apparent reason to do so. Presumably, state agents are entitled to sovereign immunity only if they qualify under the four-factor *James*

---

[2] The holding of *Atkinson* was that independent contractors of the Commonwealth are *per se* ineligible for sovereign immunity.

analysis. The clear implication of these principles is that agents of immune entities other than the Commonwealth are eligible for sovereign immunity but should receive it only if they qualify under the four-factor *James* analysis.

Whether the Foundation is eligible for sovereign immunity cannot be determined on the record presently before the Court. The Foundation's brief does not apply fully the *James* analysis to the Foundation's activities, nor do the pleadings establish the facts upon which this issue may be decided. The Court can decide whether the Foundation is entitled to sovereign immunity only when it has a solid evidentiary basis for analyzing all four of the *James* factors; therefore, the Court overrules the Foundation's plea of sovereign immunity.

## IV. *Charitable Immunity of the Foundation*

Under the doctrine of charitable immunity, a charitable entity is not liable to its beneficiaries for the negligent acts of its agents and servants if due care has been exercised in their selection and retention. *Bailey v. Lancaster Ruritan Recreational Center*, 256 Va. 221, 224 (1998) (citing *Straley v. Urbana Chamber of Commerce*, 243 Va. 32, 35 (1992)). Establishing a defense of charitable immunity, therefore, requires proof of two elements. First, the defendant must establish that it is a charitable organization and not maintained for gain or profit. *Bailey* at 256 Va. at 224 (citing *Danville Community Hosp. v. Thompson*, 186 Va. 746, 753 (1947)). If an organization's charter sets forth a charitable purpose, a rebuttable presumption arises that it operates in accordance with such purpose. *Bailey* at 224 (citing *Memorial Hosp. v. Oakes*, 200 Va. 878, 883 (1959)). Second, for charitable immunity to attach, the plaintiff must have been a beneficiary of the defendant's charity. *Straley v. Urbanna Chamber of Commerce*, 243 Va. 32, 36 (1992) (citing *Thrasher v. Winand*, 239 Va. 338, 340 (1990), and *Hill v. Leigh Memorial Hosp.*, 204 Va. 501, 507 (1963)). Under Virginia law, however, "the class of beneficiaries includes those who pay for the service as well as those who do not." *Memorial Hosp.*, 200 Va. at 885. Thus, in the instant case, if the defendant Foundation be a charitable institution, the plaintiff would clearly be a beneficiary.

Whether the defendant Foundation is a charitable institution cannot be conclusively determined at this stage of the litigation. The Foundation certainly argues persuasively that, under its charter, it is a not for profit entity, that it renders services without regard to the ability of its patients to pay, and that it has been afforded not for profit status under § 501(c)(3) of the Internal

Revenue Code. Under Virginia law, however, there is only a rebuttable presumption that an organization operates in accordance with its charter. While the defendant corporation's charter articulates a charitable, not for profit purpose, before a plea of charitable immunity is granted, the plaintiff must be afforded an opportunity to rebut the presumption that the defendant operates in accordance with its charter. The Foundation's plea of charitable immunity, then, is overruled.

V. *Foundation's Plea in Bar*
*Against Respondeat Superior Liability*

The Foundation argues that it cannot be found liable for the acts of Dr. Evans because Dr. Evans was an independent contractor and not an employee.

Under the doctrine of respondeat superior, an employer is liable for the independent torts of its employees but not of independent contractors. *McDonald v. Hampton Training Sch. for Nurses*, 254 Va. 79, 81 (1997). A four-factor test is used to determine whether an individual is an employee or independent contractor. The factors are: (1) selection and engagement, (2) payment of compensation, (3) power of dismissal, and (4) power to control the means and methods used to perform the work. The fourth factor, the power of control, is determinative; if an employer has the power to control the manner in which the work is performed, an employer-employee relationship will be found. *Id.* (citing *Hadeed v. Medic-24*, 237 Va. 277, 288 (1989)).

Whether an individual is an employee or independent contractor is generally a question of fact adjudicated by the jury. *McDonald*, 254 Va. at 87 (citing *Hadeed*, 237 Va. at 288). In the past, Virginia courts held, as a matter of law, that physicians could not be employees, on the grounds that a physician's professional skill and judgment is inherently not susceptible to external control. *Stuart Circle Hosp. Corp. v. Curry*, 173 Va. 136 (1939); *Weston's Administratrix v. Hospital of St. Vincent of Paul*, 131 Va. 587 (1921); *Virginia Iron, Coal & Coke Co. v. Odle's Administrator*, 128 Va. 105 (1920). *McDonald*, however, explicitly abrogated this principle. Under *McDonald*:

> for the purposes of determining employment status, the exercise of professional judgment by a physician in the performance of professional duties is a factor, but not the only factor, to be

considered in evaluating the employer's power to control the means and method used to perform the work.

*Id.* at 86. Thus, in *McDonald*, the Supreme Court held that the trial court erred in ruling that a physician was an independent contractor as a matter of law. Because the power of a hospital to control the work of a physician can no longer be determined through *per se* rules but, rather, requires the evaluation of many factors, whether Dr. Evans is an employee or an independent contractor is a question of fact properly left to the jury. If the evidence at trial allows only one conclusion, the Court may then determine Dr. Evans' status as a matter of law. *Id.*

In summary, the Court sustains the pleas in bar of the defendants EVMS and Drs. Andrew J. Oh and Kathryn Reynes Suarez that assert the protection of sovereign immunity. The Court overrules the EVMS Academic Physicians and Surgeons Health Services Foundation's pleas in bar that claim protection of sovereign immunity and charitable immunity. Finally, the Court overrules the Foundation's plea in bar asserting that it cannot be held liable on a theory of *respondeat superior*.

## Order

For the reasons stated in the Court's letter opinion of September 11, 2002, the Court now holds:

1. That the pleas in bar of the defendants Eastern Virginia Medical School, Andrew J. Oh, and Kathryn Reynes Suarez should be sustained and this action dismissed as to them.

2. That the pleas in bar of EVMS Academic Physicians and Surgeons Health Services Foundation should be overruled.

3. That the objections to the entry of this order of the parties are noted for the reasons stated in their memoranda submitted in support of their respective positions.

The Clerk shall forward certified copies of this order to counsel of record. It is so ordered.