## CIRCUIT COURT OF ALBEMARLE COUNTY

Scott G. McCandlish and
Catherine M. McCandlish,
Co-Administrators, etc.

v.

Irving L. Kron et al.

January 11, 1996

Case No. (Law) 5611-L

BY JUDGE PAUL M. PEATROSS, JR.

Defendants Martha S. Kiker, R.N., and Billye Jo Sisk, R.N., have filed a Plea of Sovereign Immunity in response to the medical malpractice action brought by the plaintiffs, Scott G. McCandlish and Catherine M. McCandlish, as Co-Administrators of the Estate of their daughter Margaret Mary McCandlish ("Maggie"), deceased. Plaintiffs allege that Ms. Kiker and Ms. Sisk were negligent in providing care to Maggie while she was a patient in the Pediatric Intensive Care Unit ("PICU") of the University of Virginia Health Sciences Center ("Hospital") on July 25, 1991. Plaintiffs further allege that the negligence of these defendants and of others providing treatment in the PICU caused Maggie's death on that day.

On July 25, 1991, both defendant Kiker and defendant Sisk were employed by the Hospital and were acting in the course of their employment as registered nurses in the PICU. At issue is whether the defendants, as employees of a state institution, are entitled to the defense of sovereign immunity for their alleged acts of negligence. The Court heard oral argument on the matter on December 14, 1995, and has reviewed the memoranda submitted by counsel. The facts are stated below as set forth in the Motion for Judgment.

*Facts*

Born with congenital heart anomalies, Maggie was admitted to the Hospital on July 25, 1991, for a left Blalock-Taussig shunt ("BT shunt") procedure. Following surgery, Maggie was transferred to the PICU for post-operative care at approximately 2:00 p.m.

When Maggie arrived in the PICU, her skin was pale and cold, her lips were dusky, her chest tube site was saturated with large amounts of bloody drainage, she had pink-tinged sputum, and her oxygen saturations were low. Maggie's condition deteriorated during her stay in the PICU, and at approximately 7:48 p.m., Maggie was pronounced dead.

An autopsy revealed that the BT shunt had been connected between the left subclavian artery and the left pulmonary vein instead of the left pulmonary artery. As a result, arterial blood flowed back into the left heart, increasing pressure on the left pulmonary vein preventing normal venous drainage. The pathologists performing the autopsy concluded that this sudden shunting of the arterial blood led to heart failure, pulmonary edema, and death.

During the time that Maggie was a patient in the PICU, Ms. Kiker and Ms. Sisk provided nursing care to her. Their duties were to monitor Maggie's vital signs, document those statistics in her chart, and notify physicians of significant changes in her status. According to paragraph 23 of the plaintiffs' Motion for Judgment, the defendants were negligent in, *inter alia*, failing "to respond in a timely and appropriate manner to Maggie's cardiopulmonary insufficiency, poor oxygen saturation, metabolic acidosis, hypoxemia, and other signs and symptoms" of her degenerating condition.

The following facts, set forth in an affidavit submitted by the defendants, are also relevant to the Plea before the Court. The PICU of the Hospital was one of four units in the Commonwealth which provided care to post-operative BT shunt patients in 1991. Nurses on the PICU have no control over the number and identity of the patients they serve, the amount charged for their services, or the equipment they use. The State, through hospital administrators, dictates the policies and procedures followed and the compensation received by these nurses.

*Analysis*

Sovereign immunity attaches to protect an employee of the Commonwealth from liability for negligence only when that employee satisfies all the elements of the test first enunciated in *James v. Jane*, 221 Va. 43, 282

S.E.2d 864 (1980), and modified in *Lohr v. Larsen*, 246 Va. 81, 341 S.E.2d 642 (1993):

> (1) the employee's function and the Commonwealth's interest and involvement therein;
> (2) the employee's use of judgment and discretion; and
> (3) the Commonwealth's control over and direction of the employee.

*See Lohr*, 246 Va. at 85-88. In the instant case, because the Court finds that the defendants do not qualify under the first element, the Court does not consider the second and third elements.

In *Rogers v. Commonwealth*, Case No. 6054-L (October 27, 1995), this Court granted immunity to a registered nurse and to a patient care assistant who worked on 4-West of the Hospital, the only unit of its kind providing acute care for thoracic, cardiac, and vascular surgery patients in a teaching hospital in the Commonwealth. In reaching its decision, this Court weighed heavily the Virginia Supreme Court's recent pronouncement on sovereign immunity in *Lohr v. Larsen*. Specifically, this Court considered the language of the *Lohr* opinion which focused on Dr. Larsen's function with respect to the clinic's larger purpose. *See Lohr*, 246 Va. at 86.

The larger purpose of the clinic as stated by the *Lohr* court was to protect, improve, and preserve the public health. *See id.* Teaching hospitals such as the University of Virginia Medical Center also serve the public interest by educating specialists in various fields of medicine. *See Gargiulo v. Ohar*, 239 Va. 209, 213, 387 S.E.2d 787, 791 (1990). Units such as 4-West, as in *Rogers*, and the PICU, as in the instant case, are training grounds for these specialists.

As recognized in *Rogers*, nurses on these specialized units serve the dual functions of providing care for specific patients and of enabling resident physicians to cultivate their specialized training. This Court continues to recognize the importance of the latter function of such nurses to the operation of units such as the PICU. However, when, as here, the former function eclipses the latter and the alleged acts of negligence consist solely of errors or omissions in providing basic patient care, such as in the monitoring of a specific patient's vital statistics, the shadow of the Commonwealth's immunity does not cover those acts.

Whereas in *James*, the allegedly negligent acts were not committed in furtherance of the Commonwealth's paramount interest in operating a good medical school, Dr. Larsen treated Ms. Lohr in a public health clinic directly pursuant to the Commonwealth's goal of providing health care to indigents. *Lohr*, 246 Va. at 85-86. Thus, despite the fact that Dr. Larsen's alleged negligence involved the treatment of a specific patient, the *Lohr* court granted immunity because "at the time he was treating Lohr," Dr. Larsen was directly involved in preserving the public health, a significant goal of the Commonwealth. *See id.* at 86. In contrast, at the time Ms. Kiker and Ms. Sisk were caring for Maggie, their role in furthering the Commonwealth's interest in educating specialists was far removed from and ancillary to their primary function of monitoring Maggie's condition.

The operation of a unit such as the PICU requires the skills and services of a variety of individuals, including not only the physicians and nurses but also instrument technicians and janitors. Granting immunity in the instant case simply because the defendants worked on a unit where residents trained would result in a blanket grant of immunity to anyone associated with a unit on which a medical resident sets foot. This Court does not interpret *Lohr* to require such a holding and is unwilling to extend *Lohr* to reach such a result. To the extent that this opinion is inconsistent with *Rogers*, this opinion indicates this Court's understanding of current law.

### Conclusion

Because the nature of the defendants' function was more closely tied to the care of a specific patient than to the training of medical residents, the State's interest in the defendants' provision of care does not rise to the level at which sovereign immunity attaches. Accordingly, the Court denies the defendants' Plea of Sovereign Immunity.