# CIRCUIT COURT OF ORANGE COUNTY

Colleen Lilly

v.

William C. Brink et al.

April 26, 2000

Case No. 96-62

BY JUDGE EDWARD L. HOGSHIRE

In this medical malpractice action stemming from the death of James Franklin Lilly, Jr., one the defendants, John T. Philbrick, M.D., has filed a Special Plea of Sovereign Immunity and a Motion for Summary Judgment. The Court conducted an *ore tenus* hearing on March 28, 2000, so that the parties could present evidence on the motion and the special plea. The Court, having heard oral argument and reviewed the briefs and evidence, is prepared to rule on whether the Defendant is entitled to summary judgment and whether the doctrine of sovereign immunity bars the claims against Dr. Philbrick in the instant action.

## Statement of Facts

For the purposes of this motion, the Court adopts the facts from those set forth by the Defendant in his briefs, those adduced at the *ore tenus* hearing, and those submitted in the statement of undisputed facts. The Court notes that none of the material facts set forth below appear to be disputed by the Plaintiff.

On Monday, September 26, 1994, the Plaintiff's decedent, James Franklin Lilly, Jr., sought medical care at the offices of University Physicians in Orange, Virginia. William C. Brink, M.D., a resident physician saw Mr. Lilly.

After a physical exam and assessment, Dr. Brink diagnosed Mr. Lilly as having suffered indigestion and discharged him without prescribing treatment. Dr. Brink later presented a report of this diagnosis to Dr. John T. Philbrick, an attending physician, as protocol required him to do. Dr. Philbrick reviewed the file and added his signature, thereby signaling his tacit approval of Dr. Brink's diagnosis of Mr. Lilly.

On September 26, 1994, Dr. Brink was in his second year of residency as a resident physician of the Health Sciences Center of the University of Virginia, which is a state entity. University Physicians is a facility operated by the University of Virginia to which Dr. Brink was assigned for a one month rotation as a part of his training. While not licensed as a physician at the time, Dr. Brink was eligible to seek his license from the Commonwealth and during his training was employed by the Commonwealth.

Dr. Philbrick was also an employee of the Commonwealth. On the date in question, he was acting as an attending physician with responsibility over Dr. Brink. It is undisputed that Dr. Brink treated Mr. Lilly on his own and that Dr. Philbrick was available to assist Dr. Brink had the circumstances required it. Dr. Philbrick was not aware of Mr. Lilly's visit to the offices of University Physicians on September 26, 1994, until Dr. Brink presented the case to him for review after Mr. Lilly's discharge.

Dr. Philbrick supervised Dr. Brink as a part of his training, teaching, and administrative duties as a faculty member of the Health Sciences Center. Dr. Philbrick's duties also included patient care and treatment. Dr. Philbrick did not select, hire, or employ Dr. Brink.

Dr. Philbrick regularly reviewed and signed the treatment notes of residents. Dr. Philbrick reviewed and signed Dr. Brink's treatment notes on Mr. Lilly. After reviewing Dr. Brink's notes, Dr. Philbrick had the authority to order a new course of treatment for Mr. Lilly. Dr. Philbrick did not alter the treatment recommended by Dr. Brink.

On the same day as his visit to University Physicians, Mr. Lilly died at his home of a cardiac event. The Plaintiff alleges that the failure of either Dr. Brink or Dr. Philbrick to perform adequate testing and to correctly diagnose Mr. Lilly's condition led directly to his death. Specifically the Plaintiff alleges that both Dr. Brink and Dr. Philbrick were directly negligent and that Dr. Philbrick was also vicariously liable for the conduct of Dr. Brink.

## Questions Presented

I. Can Dr. Philbrick be vicariously liable for the conduct of Dr. Brink?

II. Is Dr. Philbrick entitled to sovereign immunity as a faculty member engaged in teaching for a state-run hospital?

*Discussion of Authorities*

### I. *Dr. Philbrick's Summary Judgment Motion*

Summary judgment may be entered only if no material fact is genuinely in dispute. Rule 3:18, Rules of the Supreme Court of Virginia. In determining whether any material facts are genuinely in dispute, a court must draw its inferences from the facts most favorable to the nonmoving party "unless such inferences are strained, forced, or contrary to reason." *Carson v. LeBlanc*, 245 Va. 135, 139-40 (1993).

In the case at bar, the Defendant, Dr. Philbrick, has argued that he is entitled to summary judgment and that he should be dismissed from the action with prejudice. Dr. Philbrick argues that he can be neither vicariously liable for the conduct of Dr. Brink nor directly liable for his own alleged negligence. For the reasons articulated below, the Court denies the summary judgment motion.

As to the vicarious liability claim, the parties are in agreement that the appropriate test for whether the doctrine of *respondeat superior* creates liability in this case was provided by the Virginia Supreme Court in *Naccash v. Burger*, 223 Va. 406 (1982). The four-part test is articulated as follows:

> Four factors enter into determination of the question whether a master-servant relationship exists within the contemplation of the doctrine of *respondeat superior*, (1) selection and engagement of the servant, (2) payment of compensation, (3) power of dismissal and (4) power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative.

223 Va. at 418-19. In order for summary judgment to be granted, this Court must find that, viewed in a light most favorable to the Plaintiff, the Defendant could not satisfy the aforementioned test.

In regards to the first three elements, selection and engagement of the servant, payment of compensation, and power of dismissal, it is uncontroverted that Dr. Philbrick fails the *Naccash* test. The Plaintiff has not argued at any point that Dr. Philbrick selected or engaged Dr. Brink. Dr. Brink was selected by the Health Sciences Center, hired by the Health Sciences

Center, and assigned to the Orange Clinic by the Health Sciences Center. Dr. Philbrick was merely his superior there. Similarly, Dr. Brink was paid by the Health Sciences Center. Lastly, while Dr. Philbrick might have had the power to recommend that Dr. Brink should be removed from the program, he did not have the power to dismiss him. The power to dismiss Dr. Brink rested solely with the administrators of the residency program.

The primary point of contention, to which the parties have devoted the bulk of their briefs, is the fourth *Naccash* element, the power of control. The *Naccash* court indicated that none of the first three elements are essential to the existence of the relationship, but that the power of control element is dispositive. 223 Va. at 418-19. In the facts of the case at bar, it is not denied that Dr. Philbrick did not actually exercise any control over Dr. Brink in the treatment of Mr. Lilly. At issue is whether he *could have* exercised sufficient control to meet the fourth *Naccash* element.

In support of his motion, the Defendant argues that the power to supervise and advise is not the same as the power to control. Dr. Philbrick argues that he was a co-employee faculty supervisor of Dr. Brink and, as such, did not have requisite control over Dr. Brink to be made vicariously liable. While this Court tends to agree, the issue is not clear cut enough to satisfy the previously articulated high standard required for summary judgment. Although Dr. Philbrick did not control Dr. Brink's rotation in and out of the clinic and did not determine which patients Dr. Brink was to see, Dr. Philbrick did review the patient charts of Dr. Brink and had the power to order Dr. Philbrick to change a course of treatment. Whether this control was sufficient for the purposes of vicarious liability is a question more appropriate for the jury to decide than one for this Court to decide on summary judgment. As such, the Court denies the Defendant's summary judgment motion as to the vicarious liability claim.

In regards to the second element of liability, that Dr. Philbrick was directly negligent in the death of Mr. Lilly, the Defendant has argued that the claim is moot. The Defendant has argued that since the Plaintiff has failed to identify an expert who can present testimony that Dr. Philbrick was actually negligent, the claim should be dismissed. This argument on the part of the Defendant is not sufficient to justify summary judgment at this time on the direct negligence issue. For this reason, the Defendant's summary judgment motion as to the direct negligence claim is also denied.

## II. *Dr. Philbrick's Special Plea of Sovereign Immunity*

All parties are in agreement that the basic framework which should be applied in determining the sovereign immunity issue in this case was provided by the Virginia Supreme Court in *James v. Jane*, 221 Va. 43, 267 S.E.2d 108 (1980). This case articulates four factors that should be applied by a trial court in its determination of whether a state employee's special plea of sovereign immunity should be granted. These factors are:

(1) the nature of the function performed by the employee;
(2) the extent of the state's interest and involvement in that function;
(3) the degree of control and/or direction exercised by the state over the employee; and
(4) whether the act complained of involved the use of judgment and discretion.

*James*, 221 Va. at 53, 267 S.E.2d at 113.

To be entitled to the protection of sovereign immunity, the party seeking immunity must demonstrate that they meet all four factors. Immunity must be denied if any of the factors are not met.

In the case at hand, the Plaintiff concedes that Dr. Philbrick satisfies the fourth factor in the *James* test, as he necessarily exercised both judgment and discretion in the function that he performed. As such, the Court must review each of the remaining three factors as they apply to Dr. Philbrick. As it is also possible that Dr. Philbrick might be immune in one capacity and not immune in another, the Court will address the vicarious liability claim and the direct negligence claim against Dr. Philbrick separately.

## A. *The Nature of the Function Performed by Dr. Philbrick*

In order to determine whether this first *James* factor has been satisfied, this Court must decide whether Dr. Philbrick's conduct was that of a teacher or administrator, educating and supervising Dr. Brink, or that of a physician, overseeing treatment of Mr. Lilly. If his conduct was that of a teacher or administrator, then arguably he is entitled to sovereign immunity, given the essential interest of the Commonwealth in training doctors. *See Gargiulo v. Ohar*, 239 Va. 209 (1990). The Virginia Supreme Court in *Lohr v. Larsen*, 246 Va. 81, 85 (1993), also held that "if the function that a government employee was negligently performing was essential to a government objective and the government had a great interest and involvement in that function,

those factors would weigh in favor of the employee's claim of sovereign immunity." If, however, his conduct were more analogous to that of a private physician, then the nature of the function he performed (which would be patient care) would not entitle him to protection. *See James*, and *Lee v. Bourgeois*, 252 Va. 328 (1996).

Turning first to the direct negligence claim, the Court finds the determination of the Supreme Court in *Lee* to be dispositive of the case at hand. In *Lee*, Dr. Bourgeois, an attending physician, oversaw the conduct of a number of resident physicians. He did not treat the patient in question or order treatment of the patient. He merely reviewed the treatment a previous attending physician had recommended and allowed it to stand. While he was responsible for making the final decisions in the patient's care, he took no direct actions. *See Lee* at 332-34. The Virginia Supreme Court held that, as Dr. Bourgeois had assumed the duties of caring for the patient, his role had changed from one of an administrator or teacher to one of a doctor with a physician/patient relationship. As such, his function ceased to be one that entitled him to the protection of sovereign immunity.

The only distinction between the conduct of Dr. Philbrick and Dr. Bourgeois is that Dr. Philbrick assumed responsibility for Mr. Lilly after Dr. Brink had already seen Mr. Lilly. Just as Dr. Bourgeois entered into a doctor/patient relationship at the moment it became possible for him to alter the course of treatment, so too did Dr. Philbrick. Had Dr. Philbrick determined that Dr. Brink was in error in his recommended treatment, Dr. Philbrick would have contacted Mr. Lilly and the treatment would have been changed. This review and approval of Mr. Lilly's diagnosis makes Dr. Philbrick not just Dr. Brink's teacher and advisor, but Mr. Lilly's doctor. As such, Dr. Philbrick has failed to satisfy the first factor of the *James* test for the direct negligence claim.

Looking next at the vicarious liability issue, Dr. Philbrick successfully meets the first element of the *James* test, as any vicarious liability claim necessarily attaches to his supervisory capacity over Dr. Brink. In this role as an administrator or supervisor, Dr. Philbrick found himself in a situation where he primarily functioned as a teacher and consultant to residents, which the courts of the Commonwealth have generally held to be a protected interest. *See, e.g., James*, 221 Va. 43; *Lee*, 252 Va. 328; *Gargiulo*, 239 Va. 209. As the courts have clearly shown that this supervisory function is one worthy of protection, Dr. Philbrick is entitled to it for any liability which attaches solely to his supervisory function.

*B. The Extent of the State's Interest in the Function Performed by Dr. Philbrick*

While the state has an interest in the protection of administrative and teaching functions related to the training of physicians, the state has little interest in individual patient care. *James*, 221 Va. at 224. In the cases in which an attending has been granted sovereign immunity, it has been clear that their conduct was either purely educational or administrative, *See Klein v. Boyle*, 776 F. Supp. 285 (W.D. Va. 1991), or tied to another fundamental interest of the state. *See Lohr v. Larsen*, 246 Va. 81 (1993) (doctor at a public health clinic held to be immune as the function of a public health doctor is in the fundamental interest of the Commonwealth).

The oversight function of Dr. Philbrick's position is both educational and administrative in nature, and it is this oversight function to which the Plaintiff's vicarious liability claim attaches. In keeping with the reasoning of the aforementioned decisions, the state has a real interest in protecting attending physicians from liability that attaches solely as a result of their oversight functions. As such, Dr. Philbrick meets the second *James* element in regards to the vicarious liability claim.

That being said, the direct negligence claim against Dr. Philbrick is not based on the alleged failings of his educational or supervisory duties. On the contrary, this claim has been brought against Dr. Philbrick because he allegedly failed to alter the treatment of Mr. Lilly recommended by Dr. Brink. This is a wholly medical decision, similar to the decisions that led to liability for the doctors in *James* and *Lee*. As such, Dr. Philbrick fails to satisfy the second factor of the *James* test for the direct negligence claim.

*C. The Degree of Control and/or Direction Exercised by the State Over Dr. Philbrick*

As was held by the Virginia Supreme Court in *Lohr*, a high level of governmental control and direction of its employees weighs in favor of sovereign immunity. 246 Va. at 88, citing *James*, 221 Va. at 53-54. The *James* court also held that the control exercised by the state over the attending physician in the treatment of a patient is slight, due in large part to the broad discretion accorded to attending physicians in the selection methods of patient care. 221 Va. at 54. The analysis of the *James* court was of a treating doctor, which is what Dr. Philbrick was in the instant case for purposes of the direct negligence claim. No residency program guidelines instructed the Defendant to agree with Dr. Brink's diagnosis of Mr. Lilly. It was a medical decision, and

as such the discretion he exercised was that of a physician, as opposed to that of a teacher or administrator.

The Court in *Lee* held that "because we find that Dr. Bourgeois' function as an attending physician in this case was related to patient care and that acts taken regarding patient care are within the professional medical judgment of the physician, we conclude that the state's interest and degree of involvement are slight." 252 Va. at 335. Finding Dr. Philbrick's conduct to be functionally identical for purposes of the *James* test, Dr. Philbrick fails to satisfy this third factor of the *James* analysis in regards to the direct negligence claim.

For the vicarious liability claim, however, this Court reaches a different conclusion. The Commonwealth had placed a number of requirements on Dr. Philbrick in his capacity as an attending physician and faculty member. He had to be available for consultations, had to review all notes made by residents, and had to comply with the rules and guidelines promulgated by the state for the residency training program. While he had a great deal of discretion in how he conducted himself in regards to patient care, he did not have this degree of latitude when it came to his teaching and administrative functions. It is to these functions where the state had the greatest degree of control and direction over Dr. Philbrick that the vicarious liability claim attaches. As Dr. Philbrick was acting in his teaching and administrative capacity when he supervised Dr. Brink, the Court agrees that the degree of control Dr. Philbrick was subject to was sufficient to satisfy this third *James* factor for the vicarious liability claim.

## Conclusion

The Court denies Dr. Philbrick's summary judgment motion as to both the direct negligence claim and the vicarious liability claim. Due to the failure to satisfy three of the four factors of the *James* test, Dr. Philbrick's sovereign immunity plea must fail as to the direct negligence claim, but in light of his having successfully met all four of the factors in the *James* test, Dr. Philbrick's sovereign immunity plea is granted as to the vicarious liability claim. Accordingly the Court hereby denies the Defendant's Motion for Summary Judgment and denies in part and grants in part his Special Plea of Sovereign Immunity.