# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Airianna Gaines,
an infant,
by her mother
and next friend,
Amy Brown

v.

Health Services Foundation et al.

April 30, 2010

Case No. CL08-147

By Judge Edward L. Hogshire

In this medical malpractice action, Defendants Jennifer Fillers, R.N., Alice Richardson, R.N., Naomi Rademeyer, and Shannon Horton, R.N., have filed Pleas of Sovereign Immunity. For the reasons set forth below, Defendants' Pleas will be denied.

## Facts

The Plaintiff, Airianna Gaines, an infant, by her mother and next friend, Amy Brown, alleges that Ms. Fillers (now Jennifer L. Fox) negligently placed a peripherally inserted catheter central line ("PICC line") in Airianna Gaines's right arm. The Plaintiff also alleges that Ms. Richardson, Ms. Rademeyer, and Ms. Horton failed to notice signs and symptoms indicating that the PICC line had been negligently placed. The Defendants, registered nurses at the University of Virginia Medical Center, have responded with Pleas of Sovereign Immunity. Depositions were taken, and a hearing on the Pleas was convened on November 24, 2009.

The Court heard evidence and argument and took the matter under advisement.

The following facts are relevant to the Defendants' Pleas. On December 10, 2006, Airianna Gaines was born prematurely at the University of Virginia Medical Center. (Compl. at 3.) She was transferred to the Neonatal Intensive Care Unit ("NICU") at the hospital, where she needed various I.V. lines placed, including a PICC line. (Hr'g Tr. at 6.) Ms. Fillers, one of the nurses authorized to place this type of line, (Hr'g Tr. at 6; Fillers Dep. Tr. at 7), placed a PICC line in Airianna Gaines's right arm according to her standard practice. (Fillers Dep. Tr. at 11-12.) Ms. Fillers chose the arm to use, and she also chose the most appropriate vessel in which to place the catheter. (*Id.* at 12-13.) Before Ms. Fillers dressed the site, she contacted Dr. Martha Naylor, a fellow in neonatology, for physician review of the placement of the line, as directed by hospital procedures. (Hr'g Tr. at 7; Fillers Dep. Tr. at 20-24.) An x-ray was ordered, Dr. Naylor reviewed the x-ray film, and Dr. Naylor told Ms. Fillers that the line was correctly placed. (Hr'g Tr. at 7.)

Several hours later, the bedside nurse notified Ms. Fillers that the dressing on Airianna Gaines's arm had become saturated. (Fillers Dep. Tr. at 26.) Ms. Fillers determined that the dressing needed to be changed, and, in the course of changing the dressing, the PICC line moved. Ms. Fillers asked Dr. Naylor for a second x-ray to confirm placement of the PICC line. (*Id.* at 27.) Another x-ray was taken, and Dr. Naylor told Ms. Fillers the line was correctly placed. (*Id.* at 27-28; Hr'g Tr. at 8.) Twenty-four hours later, Ms. Fillers removed the line when it became apparent that the arm had blanched below the PICC line site, and a second line was placed. (Fillers Dep. Tr. at 17, 38.) It was later determined that Airianna Gaines's right arm needed to be surgically removed. (Hr'g Tr. at 8.)

From 7:00 a.m. to 11:00 a.m. on December 12, 2006, Airianna Gaines was also the patient of Ms. Richardson, a nurse in the NICU. (Richardson Dep. Tr. at 9.) Throughout her shift, Ms. Richardson checked on the child and assessed the site of the PICC line. (*Id.* at 24-25.) She paged Ms. Fillers when she noticed there was bleeding at the PICC line site. (*Id.* at 26.) Ms. Richardson also served as the preceptor to Ms. Andrea Bowman (*id.* at 9-10), a nurse in training who provided care to Airianna Gaines, whom the plaintiff has agreed is entitled to sovereign immunity. (Hr'g Tr. at 19.)

Ms. Rademeyer, a nurse in the NICU of the University of Virginia Medical Center, was also on duty on December 12, 2006. She made entries into Airianna Gaines's chart before she went off duty at 7:00 a.m. on

December 12 and after she came back on duty at 7:00 p.m. on December 12. (Rademeyer Dep. Tr. at 10-11.)

Ms. Horton, a nurse in the NICU of the University of Virginia Medical Center, was also on duty December 12, 2006. Ms. Horton inspected Airianna Gaines's arm when she first came on duty at 7:00 a.m., (Horton Dep. Tr. at 12), and later at 12:00 p.m. that same day when she noticed that the child's fingers and hand had turned white. (*Id.* at 18; *see* Hr'g Tr. at 8.)

In addition, the following facts set forth in the Defendants' Pleas are relevant. NICU nurses at the University of Virginia Medical Center have no control over the number and identity of the patients they serve, the amount charged for their services, or the equipment they use. (Hr'g Tr. at 12, 24.) These determinations are made by the Commonwealth, through hospital administrators. (*Id.*)

## *Issue Presented*

Whether the Defendants, registered nurses and employees of the University of Virginia Medical Center, are entitled to sovereign immunity from liability for medical malpractice related to care they dispensed under the general supervision of a licensed physician engaged as a fellow in the neonatology department.

## *Analysis*

Sovereign immunity attaches to protect an employee of the Commonwealth from liability for negligence only when that employee satisfies all four elements of the *James v. Jane* test:

1. The nature and function performed by the employee;
2. The extent of the State's interest and involvement in that function;
3. The degree of control and direction exercised by the State over the employee;
4. Whether the act complained of involved the use of judgment and discretion.

*James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980); *Messina v. Burden*, 228 Va. 301, 313, 321 S.E.2d 657, 663 (1984). The Supreme

Court of Virginia has not addressed the issue of whether a nurse in a public hospital or medical school is entitled to sovereign immunity.

1. *Nature and Function Performed by the Employee; Commonwealth's Interest and Involvement Therein*

For the purposes of analysis, factors one and two of the *James v. Jane* test will be combined, as the two are closely related and interdependent. As the Supreme Court of Virginia stated in *Lohr v. Larsen*, 246 Va. 81, 85-86, 431 S.E.2d 642, 644-45 (1993), if the function the government employee was negligently performing was essential to a government objective, and the government had a great interest in that function, this weighs in favor of a defendant's sovereign immunity. By contrast, if the employee's function has only a marginal influence upon a governmental objective, and the government's interest is slight, this weighs against sovereign immunity. *Id.* In this case, the Plaintiff asserts that the Defendants served the function of providing patient care to Airianna Gaines, and the Commonwealth has little interest in individual patient care as provided at the University of Virginia Medical Center.

First, the Plaintiff argues that the conduct of the Defendants is analogous to that provided by the physician in *Lilly v. Brink*, 52 Va. Cir. 182 (Orange County 2000). In *Lilly*, the Court relied on *Lee v. Bourgeois*, 252 Va. 328, 332-34, 477 S.E.2d 495, 497-98 (1996) (denying sovereign immunity to an attending physician and faculty member at the University of Virginia Hospital and Medical School because the attending was serving the primary function of treating patients at the time of the alleged negligent acts), to deny sovereign immunity to an attending physician supervising a second-year resident. The Court found that the attending physician was functioning more as a treating physician than a teacher. In doing so, the Court emphasized the essential interest of the Commonwealth in training doctors, as opposed to providing patient care. *Id.* at 186.

In *James v. Jane*, 221 Va. at 54, 282 S.E.2d at 870, the Supreme Court of Virginia first articulated this distinction between the Commonwealth's general interest in proper medical care and its more specific interest — in its sovereign capacity — in education and training at the University of Virginia Medical Center:

> [T]he paramount interest of the Commonwealth of Virginia is
> that the University of Virginia operate a good medical school

and that it be staffed with efficient and competent administrators and professors. The state is of course interested and concerned that patients who are treated at the University Hospital receive proper medical care. However, the state has this same concern for every patient who is treated in any private hospital or by any doctor throughout the Commonwealth. This is evidenced by the numerous statutes enacted by the General Assembly of Virginia designed to assure adequate medical care and medical facilities for the people of the state. The state's interest and the state's involvement, in its sovereign capacity, in the treatment of a specific patient by an attending physician in the University Hospital are *slight*; equally slight is the control exercised by the state over the physician in the treatment accorded that patient.

*Id.* (emphasis added). In this case, because the Defendants were involved purely in providing healthcare, the Court agrees that they are not immune. The Defendants primarily performed a function of providing direct patient care, rather than a student or teaching function. Their function in providing treatment to Airianna Gaines was not oriented toward research, as in the case of *Gargiulo v. Ohar*, 239 Va. 209, 387 S.E.2d 787 (1990), or education and training, as in the case of *Lawthorne v. Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973), overruled on other grounds by *First Virginia Bank-Colonial v. Baker*, 225 Va. 72, 301 S.E.2d 8 (1983). Their function was to provide medical nursing care to patients admitted to the NICU unit.

The distinction between providing direct patient care and performing a training or teaching function was recognized in this Court by Judge Swett in *Houchens v. Rector and Visitors of the University of Virginia*, 23 Va. Cir. 202, 205 (Charlottesville 1991) (holding that several nurses with specialized training employed at the University of Virginia Hospital were not entitled to the protection of sovereign immunity for claims of ordinary negligence in the use of heat lamps). Although Defendants argue to the contrary, Judge Swett's opinion in *Houchens* is not negated by the Supreme Court of Virginia's later decision in *Lohr*, 246 Va. 81, 431 S.E.2d 642. In *Lohr*, the Supreme Court recognized the Commonwealth's interest in quality medical care in a specialized public health clinic, whereas the Supreme Court has not recognized a separate interest in the University of Virginia Medical Center outside of the

Commonwealth's interest in medical education, as articulated in *James v. Jane*.

Although the Defendants argue that it would be incongruous if the individual who repeatedly confirmed placement of the PICC line, Dr. Naylor, a neonatology fellow in training, would be immune from liability under *Gargiulo* while the Defendant nurses in this case would not, the Supreme Court of Virginia has clearly stated that the Commonwealth's general interest in its citizens receiving adequate medical care is slight in the context of a state's interest as sovereign. By contrast, the Commonwealth has a significant interest in providing medical education at the University of Virginia Medical Center. Without further guidance from the Supreme Court, it is difficult to see how providing immunity to nurses assigned to the NICU unit for acts of negligence would further the Commonwealth's interest in providing medical education.

The Defendants also rely on Judge Peatross's decision in *Rogers v. Commonwealth*, 38 Va. Cir. 217 (Albemarle County 1995), which recognized the important function of nurses in enabling resident physicians to cultivate their specialized training in units such as the PICU. While it is true that the NICU, by analogy, is a training ground for specialists, here, the role of the Defendants in furthering the Commonwealth's interest in educating specialists in the NICU was ancillary to their primary function of providing care to Airianna Gaines. *See McCandlish v. Kron*, 38 Va. Cir. 302 (Albemarle County 1996). In the treatment of Airianna Gaines, the Defendants served as caregivers; they were not involved in any state-sponsored research; they were not students or interns trying to pursue further training; they were not primarily engaged in teaching; nor were they primarily engaged in administrative work. *See Hughes v. Lake Taylor City Hosp.*, 54 Va. Cir. 239 (Norfolk 2000).

The Defendants also rely on the opinion of Justice Lemons, then Judge Lemons, in *Stevens v. Hospital Auth. of Petersburg*, 45 Va. Cir. 162 (Richmond 1998), which granted sovereign immunity to all defendants, including nurses at a government-run hospital. In *Stevens*, however, the Court recognized the distinction between the Commonwealth's interest in the University of Virginia Medical Center as a teaching hospital, and the Southside Regional Medical Center, a hospital created for another statutory purpose:

> For the purpose of analysis of entitlement to sovereign immunity, a major distinction between SRMC [Southside Regional Medical Center] and the University of Virginia

> Medical Center is the nature of the Commonwealth's interest. In *James v. Jane*, the Court noted that the Commonwealth's paramount concern was operating a medical school and not the provision of medical services to the public. By contrast, SRMC was created pursuant to Title 15.1, Chapter 38, § 15.1-1533 et seq., and its sole purpose is the provision of a hospital where medical services and patient care are rendered.

*Id.* at 164.

Finally, the Defendants also cite statutory changes occurring on July 1, 1996, to bolster their argument that the Commonwealth maintains a significant interest in patient care at the University of Virginia Medical Center sufficient to satisfy the *James v. Jane* test. In Va. Code § 23-77.4, the General Assembly formally recognized the purposes of the University of Virginia in maintaining a medical school and operating its Medical Center, which include providing "for the care, treatment, health-related services, and education activities associated with Virginia patients, including indigent and medically indigent patients." Although the Defendants are correct that these statutory changes occurred subsequent to the Supreme Court's decisions in *James v. Jane* and *Lee*, court decisions occurring after the Code changes have not deviated from the *James v. Jane* mode of analysis when considering the Commonwealth's specific interest in the University of Virginia Medical Center as a training hospital.

2. *Degree of Control and Direction Exercised by the Commonwealth over the Employee*

The Plaintiff concedes that the State exercised direction and control over the Defendants' conduct. (Pl. Opp'n to Defs. Pleas of Sovereign Immunity at 4.)

3. *Employee's Use of Judgment and Discretion*

The Plaintiff argues that the Defendants were performing ministerial acts. According to the deposition testimony, however, it is clear that the Defendants use discretion and judgment in their duties day-to-day and regarding their care and treatment of Airianna Gaines.

As pertinent to this case, Ms. Fillers chose which of Airianna Gaines's arm to use when placing the PICC line, and she also chose the most appropriate vessel in which to place the catheter. Likewise, it is

evident that the training of the other Defendants equipped them to make independent judgments about how to carry out their duties. Each of the Defendants assessed Airianna Gaines when coming on duty, made chart notations throughout their provision of care, and ultimately decided when and how to contact other members of the nursing and physician staff throughout the performance of their duties.

## Conclusion

In conclusion, since the Defendants have failed to satisfy the first two prongs of the *James v. Jane* test, the Defendants' Pleas of Sovereign Immunity should be denied. Neither the nature of the function performed by the nurses assigned to the NICU nor the Commonwealth's interest in that function are sufficient to warrant immunity from acts of simple negligence. The Defendants primarily served the function of providing patient care to Airianna Gaines, and the Commonwealth has little interest — in its sovereign capacity — in individual patient care as provided at the University of Virginia Medical Center.