# CIRCUIT COURT OF THE CITY OF RICHMOND

Douglas E. Pike

v.

Kathryn S. Hagaman *et al.*

March 31, 2015

Case No. CL13-1815

By Judge Gregory L. Rupe

This matter was brought before the Court on March 20, 2015, on the Plea of Sovereign Immunity ("Plea") filed jointly by the Defendants, Kathryn S. Hagaman, R.N. ("Hagaman" or "Nurse Hagaman") and her employer, Virginia Commonwealth University Health System Authority, d/b/a VCU Health System and also d/b/a MCV Hospitals ("VCUHSA"). The Defendants and the Plaintiff, Douglas E. Pike, appeared, in person and through counsel to present argument and evidence. The Court took the matter of Hagaman's derivative sovereign immunity under advisement pending the issuance of this letter opinion.

Upon due consideration of the law and facts, the Court hereby grants the Plea as to Nurse Hagaman for the reasons that follow. This action is, therefore, ended and dismissed with prejudice. The outstanding motions *in limine* filed by Plaintiff are accordingly rendered moot and dismissed as well.

## Factual Background

This is a negligence action against a nurse and the hospital for which she worked. This recitation of facts is an oversimplification and does some injustice to the full story, but it is simplified to focus upon the issue at hand. In April 2011, Plaintiff received a complex operation by means of microsurgery in his head and neck area. Hagaman, working as a nurse in the Surgery and Trauma Intensive Care Unit ("STICU"), was assigned to tend to Pike in his post-operative state. The parties dispute the degree to which an instruction to this effect was delivered to Hagaman, but, as part of this post-operative care, Pike's head and neck were to remain positioned in a particular, upright manner in order to facilitate healing. On at least two occasions, his head and neck shifted out of position, causing injury and further surgery. Plaintiff alleges this was the fault of his nurse, Hagaman, who "failed to follow physician instructions with regard to her patient, Pike." Compl. ¶ 22. Plaintiff seeks $2,500,000 for his disfigurement, medical expenses, and pain/suffering. Defendants deny any negligence.

At the outset of the hearing, counsel for Plaintiff conceded that VCUHSA was indeed entitled to sovereign immunity. By Order entered on the date of the hearing, the Court dismissed VCUHSA from the present matter. The only remaining defendant is Hagaman. The issue here is simple. The answer is not so simple. The issue is whether this particular nurse, working for a Commonwealth institution, is protected by the Commonwealth's sovereign immunity.

## Analysis

Sovereign immunity and its application to employees of Commonwealth agencies is not a novel issue, particularly in the area of medical malpractice. The results have been varied, and this seems to be a function of the peculiar facts of the various cases.

## Sovereign Immunity of Nurse Hagaman

Defendants admit that Hagaman was an employee of VCUHSA at the time of the alleged negligence, but correctly note that sometimes sovereign immunity may extend to employees of immune governmental entities. *See Messina v. Burden*, 228 Va. 301, 312 (1984) ("If an individual works for an immune governmental entity, then, in a proper case, that individual will be eligible for the protection afforded by the doctrine [of sovereign immunity.]"). Both parties correctly state that Hagaman's potential derivative immunity is subject to the four-part test outlined in *James v. Jane*, 221 Va. 43 (1980), and the cases that follow.

In *James*, the Supreme Court of Virginia developed a four-part test to determine an employee's eligibility to share in the sovereign immunity of the Commonwealth or agency. The factors are: (1) the nature and function

performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion. *James*, 221 Va. at 53. All four elements must be satisfied for sovereign immunity to attach to an employee.

1. *The Nature and Function Performed by the Employee and*
2. *The Extent of the State's Interest and Involvement in the Function*

The first two factors are often considered together. *Lohr v. Larsen*, 246 Va. 81, 85 (1993). "If the function that a government employee was negligently performing was essential to a governmental objective and the government had a great interest and involvement in that function, those factors would weigh in favor of the employee's claim of sovereign immunity." *Lohr v. Larsen*, 246 Va. 81, 85 (1993). Similarly, if the function performed was not essential and the state only has a slight interest, this weighs against finding sovereign immunity.

Hagaman argues that the Supreme Court of Virginia has recognized that the protection and preservation of public health is essential to the general welfare of citizens, so the extent of the state's interest is, therefore, great. *See Lohr*, 246 Va. at 86. Accordingly, since Hagaman was a nurse performing highly specialized tasks in furtherance of this objective, her job was essential to an important governmental objective. In support, Defense counsel cites to two illustrative cases from the Circuit Court of the City of Richmond: *Stevens v. Hospital Auth. of the City of Petersburg*, 45 Va. Cir. 162 (City of Richmond, 1998) (Wilkinson, J.), and *Lee v. Quorum Health Resources*, 44 Va. Cir. 179 (City of Richmond, 1997) (Lemons, J.). In both of these cases, the judges stated in a conclusory fashion that the government has a great interest and involvement in the provision of health care in state-sponsored hospitals, and the nurses engaged therein are essential to this important government objective.

Further, Hagaman cites to *Rogers v. Commonwealth*, 38 Va. Cir. 217 (Albemarle County, 1995). In *Rogers*, the hospital in question was one of only two places in the state that offered certain specific health care services, and the hospital would be unable to provide such sophisticated care without specially trained nurses. *Id.* at 219. Defendants analogize *Rogers* to the case at bar, pointing out that the type of surgery Pike received at the hospital and the type of care he received in the STICU could only be accomplished at few other, if any, hospitals in the state, and only a specially trained and essential nurse such as Hagaman could operate in this environment.

In light of *Rogers*, the evidence adduced on this point at the hearing is persuasive. Hagaman's first witness stated that the "microsurgical flap reconstruction" surgery Pike received at VCUHSA was, at the time of surgery, only being offered at precious few, if any, other hospitals in Virginia. Moreover and more relevantly, the post-operative care given to patients

receiving this surgery is very specialized, and the success of the surgery depends largely on the quality of the post-operative care. The STICU at VCU Hospital is the only Level 1 trauma center in the Commonwealth of Virginia (in addition to serving as an "academic medical center"). Hagaman, a nurse in the STICU attending to Pike in his post-operative state, has a great depth of expertise in offering this kind of specialized care. Defendants' second witness described Hagaman as "highly trained." One witness described the patients of the STICU as "the sickest of the sick." There was no shortage of evidence at the hearing as to Hagaman's special expertise and how it is utilized to provide the uncommon services at the STICU. This evidence tends to prove that the first prong of the *James* test is satisfied here.

As to the second prong of the *James* test, the extent of the state's interest and involvement, Defense counsel draws our attention to the portion of the Code of Virginia where VCUHSA itself was created. It states that:

> The missions of the Medical College of Virginia Hospitals are to (i) serve as a general hospital and health care facility, (ii) facilitate and support the health education, research, and public service activities of the Health Sciences Schools of the Medical College of Virginia, Health Sciences Division of Virginia Commonwealth University, (iii) provide high quality patient care and other specialized health services not widely available in the Commonwealth, including the provision of medical care to indigent patients, (iv) serve as the principal teaching and training hospital for undergraduate and graduate students of the Schools of the Health Sciences Division of Virginia Commonwealth University, and (v) provide a site for faculty members of the Health Sciences Division of Virginia Commonwealth University to conduct medical and biomedical research, *all of which missions constitute essential governmental functions* for protecting and promoting the health and welfare of the citizens of the Commonwealth.

Va. Code Ann. § 23-50.16:2(4) (emphasis added). The Code of Virginia directly states that the operation of the VCUHSA is an essential government function, which satisfies the second prong of the *James* test. Further, factors (i), (iii), and (iv), read in light of *Rogers*, weigh heavily in favor of finding that Hagaman's job was essential to the accomplishment of this essential governmental function. Much like the nurse in *Rogers*, Hagaman was endeavoring to provide patient care services "not widely available in the Commonwealth." Va. Code Ann. § 23-50.16:2(4). This weighs in favor of satisfying the first prong of the *James* test.

However, Plaintiff's argument and evidence paints a more complicated picture. Essentially, Plaintiff draws a distinction between hospitals and job

functions that focus on education and research and those that simply focus on patient care. *Houchens v. Rector and Visitors of the Univ. of Va.*, 23 Va. Cir. 202 (City of Charlottesville, 1991), is illustrative. The *Houchens* Court compared two other cases, *James* and *Gargiulo v. Ohar*, 239 Va. 209 (1990). Citing to *James*, the *Houchens* Court pointed out that there is an important distinction between the state's interest in the operation of a good medical school and trained physicians to teach therein and the state's interest in the treatment of specific patients. *Houchens*, 23 Va. Cir. at 205. *James* itself stated:

> The state is of course interested and concerned that patients who are treated at the University Hospital receive proper medical care. However, the state has this same concern for every patient who is treated in any private hospital or by any doctor throughout the Commonwealth.... . *The state's interest and the state's involvement, in its sovereign capacity, in the treatment of a specific patient by an attending physician in the University Hospital are slight.*

221 Va. at 54 (emphasis added). In essence, the more teaching that nurses and doctors engage in at state-sponsored hospitals, the more likely they are to enjoy sovereign immunity.

Moreover, in *Gaines v. Health Services Foundation*, 80 Va. Cir. 336 (City of Charlottesville, 2010), the Court found that, in the treatment of the injured party, the nurses "served as caregivers; they were not involved in any state-sponsored research; they were not students or interns trying to pursue further training; they were not primarily engaged in teaching; nor were they primarily engaged in administrative work." *Gaines*, at 341. Because the "role of [the *Gaines* nurses] in furthering the Commonwealth's interests ... was ancillary to their primary function of providing care" to the *Gaines* plaintiff, *id.*, the mere fact that teaching occurs on site was not enough to satisfy the first element of the *James* test.

In the pleadings and at the hearing, Plaintiff stressed that the negligence alleged here was simply in the treatment of a specific patient and, therefore, the state's interest is slight. Because Hagaman's alleged negligence occurred in the routine treatment of a patient at her place of employment, rather than through any sort of teaching capacity, Pike argues that the state's interest and involvement is too slight to afford her the protection of sovereign immunity. Pike essentially claims that, because Hagaman is not a teacher and her main task at VCUHSA is simply to provide care to patients, she fails to meet the first two elements of the *James* test.

The Court could conceivably find that the case at bar is analogous to *Gaines* or *Houchens*. The allegation of negligence here occurred merely in the treatment of a specific patient, which weighs against finding the protection of sovereign immunity applies to Hagaman. As to teaching,

Hagaman's witnesses stated that hospital residents are often assigned to learn from the special nurses at the STICU, such as Hagaman. While Hagaman is not herself a teaching professional, her close working relationship with the residents at VCU Hospital does seem to have a teaching/instruction component to it. Hagaman described her practice in the STICU as "interdisciplinary," stating that she has "countless" contacts with the resident physicians on a daily basis. Regardless, in keeping with *Gaines*, these tasks are ancillary to Hagaman's main function, providing care to patients in the STICU.

However, merely because Hagaman was not teaching or researching at the moment of the alleged negligence does not mean she must automatically be denied sovereign immunity. Even if Hagaman was merely treating Pike at the time, the specificity of the services rendered in the STICU and the specialized nature of Hagaman's duties, as outlined above, speak in favor of satisfying the first prong of the *James* test. *See Rogers*, 38 Va. Cir. 217. Moreover, the "nature and function" of Hagaman's actions must be viewed in light of the "extent of the state's interest and involvement in the function." *James*, 221 Va. at 53. Her actions, as a nurse, were essential to carrying out the express interest of the Commonwealth as embodied in Va. Code § 23-50.16:2(4). The Court cannot ignore that the state's interest in these functions is statutorily defined as "essential." VCUHSA was created to serve a variety of purposes, including providing high quality patient care. Hagaman's job was essential to that purpose, even if she was merely treating a patient and was not employed in a teaching or research function. Accordingly, the Court finds that the first two prongs of the *James* test are satisfied.

### 3. *The Degree of Control and Direction Exercised by the State over the Employee*

As to the level of control exercised by the state over the employee, "a high level of control weighs in favor of immunity; a low level of such control weighs against immunity." *Lohr*, 246 Va. at 89. Defense counsel for Hagaman argued that VCUHSA had a high degree of control over Hagaman, who was supervised by more senior nursing staff. VCUHSA set her work schedule, and Hagaman had no choice over her patients; they were assigned to her. Hagaman was paid by VCUHSA and she had no control over billing or bill collection. She was subject to VCUHSA policies. The evidence adduced at the hearing reflected this reality.

The doctors in *James*, who were denied immunity, billed patients separately than the hospital, set their own schedule, and had broad discretion as to how to diagnose and treat patients. They were essentially independent entities, working under the umbrella of the hospital. In *James*, "the exercise by the attending physician of his professional skill and judgment in treating his patient, and the means and methods used, from the very nature of

things, are not subject to the control and direction of others." *James*, 221 Va. at 50–51. The part-time physicians in *McCloskey v. Kane* were similarly independent. They were paid hourly, received no state benefits, and were permitted to sleep on the job. 268 Va. 685, 688 (2004). The control exercised over Hagaman seems to more closely approximate the relationship in *Lohr*, where the state controlled "absolutely" the equipment used, the procedures performed, and the inability to refuse patients. *Lohr*, 246 Va. at 88.

Moreover, even the authority relied upon by Plaintiff in his reply brief weighs in favor of satisfying this third prong of the *James* test. In analyzing the control over nurses in one circuit court case, the judge stated:

> The nurses and scrub technicians receive a salary from the hospital, work set shifts, perform to specific guidelines, and do not choose their patients. The Court has held that these facts, among others, illustrate that the state demonstrates sufficient control over these employees to fulfill the third factor of the sovereign immunity test.

*Marsh v. Medical College of Va. Hospitals*, 71 Va. Cir. 404, 406 (City of Richmond, 2006) (Markow, J.). Plaintiff offered little evidence to demonstrate that VCUHSA did not totally control Hagaman's job. This factor of the *James* test is thus satisfied as to Hagaman and weighs in favor of finding sovereign immunity.

*4. Whether the Act Complained of Involved the Use of Judgment and Discretion*

And finally, the fourth prong is "whether the act complained of involved the use of judgment and discretion." This is the trickiest part of this *James* test; it appears as though prongs three and four cut in separate directions. If a higher level of state control weighs in favor of immunity, how could a higher level of employee discretion weigh in favor of immunity as well? *Lohr* attempts to explain this when it says:

> At first glance, the issue of wide discretion that influences our consideration of the grant of governmental immunity in applying the third element of the *James* test appears to be at odds with our consideration of a higher level of governmental control in the application of the fourth element of that test in this case. However, when a government employee is specially trained to make discretionary decisions, the government's control must necessarily be limited in order to make maximum

use of the employee's special training and subsequent experience.

*Id.* at 88. If an employee exercises broad discretion in the act or omission of negligence alleged, this factor will weigh in favor of granting immunity. *Id.* at 87

The case law demonstrates that discretion in this context is evaluated by looking at the *specific* task at issue, rather than the overall job description of the employee. As stated in *Hughes v. Lake Taylor City Hosp.*, 54 Va. Cir. 239 (City of Norfolk, 2000), "[I]t is the judgment and discretion used to perform the particular act in question, not the judgment and discretion used to perform the job generally." *Id.* at 244 (citing *Puckett v. City of Richmond*, 1998 WL 619092 (City of Richmond, Jan. 13, 1988)); *see also Heider v. Clemons*, 241 Va. 143, 145 (1991) (stating that the exercise of judgment and discretion in the context of sovereign immunity applies to the specific act or negligence at issue, rather than an overall job description or course of conduct).

Defendant avers that Hagaman must use her judgment and experience to do things like "assess [Plaintiff's] overall condition, including the condition of his oral flap, and determine whether … to give additional medications and whether and when to contact a physician." Def's. Br. Supp. Sovereign Immunity 16–17. Defendant offered testimony on this element from Hagaman herself and two witnesses. Because the act complained of occurred in the exercise of Hagaman's discretion, Hagaman argues that sovereign immunity should apply to her.

On the other hand, the Plaintiff attempts to focus the inquiry on one main act: the fact that Hagaman, allegedly, did not follow the specific instructions of her superiors to keep Pike's neck in the proper position. This act by Plaintiff — or more accurately, this failure to act — does not involve any real judgment or discretion. It actually represents the opposite of discretion; if Hagaman's superior instructed her to do a specific task and she failed to do so, this would weigh in favor of denying Hagaman the protection of sovereign immunity. The Court is drawn to the following language in *Hughes*: "[a]s for the other more general allegations … the nurses … are not entitled to sovereign immunity even though they may exercise a level of discretion in their jobs." *Hughes*, 54 Va. Cir. at 245. In light of the law's focus on the particular act, rather than the job generally, the Plaintiff's characterization of Hagaman's conduct weighs against finding sovereign immunity.

Plaintiff references *Gray v. Commonwealth*, a case heard by Judge Hughes. In his opinion, Judge Hughes stated:

> While it is clear that nurses very often use judgment and discretion in their duties day-to-day … there is no evidence concerning whether any discretion was being used by them

when the negligent act complained of occurred. The nurses have admitted they acted without authority in [the act alleged]. This admission suggests that the order was given for the proper administration and it was simply not followed. Placing the line in the wrong blood vessel is a rather simple, direct act which appears ministerial and as such is not entitled to protection by sovereign immunity.

*Gray*, 40 Va. Cir. 419, 422 (City of Richmond, 1996) (Hughes, J.) (emphasis added). This weighs against a grant of sovereign immunity.

Plaintiff proffered to the Court the evidence that there was a sign above Pike's head in his room at the STICU ordering all those present that his head/neck were to be maintained in an upright position at all times. Hagaman disputes the existence of a sign to this effect. Hagaman stated that there *was* a sign in the room, but it cautioned against allowing Pike to consume nicotine or caffeine during his stay in the STICU.

Plaintiff also offered the Court two exhibits: the treating physicians' "Progress Notes" and the associated "Orders." These documents are almost self-explanatory; they are notations made by Pike's treating physicians, which detail his recovery and the steps that nurses must take in facilitating his recovery. The Progress Notes state on three occasions that Pike's head must be kept in a "neutral position," and there must be "no pressure to the right side of [Pike's] face/neck." The Progress Notes, as well as the Orders, state also that the nurses are to keep the "HOB" elevated. The Court interprets "HOB" to mean "Head of Bed." Regardless, there is no allegation in the present case that the head of the bed was ever lowered; only that Pike's head was allowed to shift out of position. The Orders indicate that Pike may not be given anything containing caffeine or nicotine, and that nurses should not be applying any pressure to Pike's right neck/head area. The Orders do not say anything about keeping Pike's head in a particular position.

In light of the above facts and law, the Court finds that the act complained of here did indeed involve the use of judgment and discretion by Nurse Hagaman, and, therefore, the fourth element of the *James* test is satisfied. First, while the Progress Notes state that Pike's head was to be kept in a "neutral position," this was never reduced to a formal "order" on the Orders sheet. Hagaman testified that she was never *directly* instructed, either verbally or in writing, to keep Pike's head in an upright position. The Orders sheet given to Hagaman on the morning of April 18, 2011, only instructs her to keep the head of the bed elevated and to avoid putting pressure on Pike's head or neck area. The evidence presented demonstrates that the head of the bed remained elevated and Nurse Hagaman did not put any pressure on the affected area. There was convincing testimony that, if keeping Pike's head in an upright position was indeed an order, it would have been listed as such on the Orders sheet.

Additionally, even if "keeping Pike's head erect" was a direct order, the method of doing so was within Hagaman's judgment and discretion. Hagaman had to use her judgment and discretion in *how* she carried out this directive. She could have sat and watched Pike for her whole shift, or attempted to. She could have strapped his head to the bed using a belt or some other restraint. Without listing all of her options, Hagaman had a number of ways, through the use of her judgment and discretion, to keep his head in a "neutral position."

The Court's finding on this element is best explained through comparison to two other cases. In *Gray v. Commonwealth*, the plaintiff's treatment called for the intravenous administration of calcium chloride. *Gray*, 40 Va. Cir. at 419. Instead, the nurses administered the calcium chloride through an artery, or intra-arterially, causing tissue damage to the plaintiff's right arm. *Id*. The nurses admitted they acted without authority in administering the calcium chloride through an arterial line, and the Court found that there was no evidence that any discretion was used in this negligent act. *Id*. at 421–22. The Court was correct; the nurses did not have any judgment and discretion when it came to the administration of the calcium chloride. In the case at bar, keeping Pike's head elevated and in a particular position is not a simple, ministerial act such as the act in *Gray*.

Further, in *Hughes v. Lake Taylor City Hosp.*, the Court, in *dictum*, described certain acts by the nurses that were merely ministerial. The Court stated:

> Although not necessary for this decision, this case involves two allegations that could possibly be classified as purely ministerial and therefore not entitled to immunity: the fact that the patient was stamped as "DNR" status instead of a "full code" status as requested and the failure to arrange for transport of the patient to an emergency facility immediately as ordered by the attending physician. Those two acts involved no real judgment or discretion.

*Hughes*, 54 Va. Cir. at 244–45. Again, Nurse Hagaman's task in the case at bar is not a simple, ministerial act like using the wrong stamp or failing to arrange transport, as in *Hughes*. Nurse Hagaman was to maintain Pike's head in a particular position, and had to exercise her judgment and discretion in doing so. The case at bar is not as simple as drawing blood from the wrong vein or checking the wrong box on a form. The act complained of did indeed require the use of judgment and discretion, and, therefore, the fourth and final prong of the *James* test is satisfied.

## Conclusion

The Court is well aware that the law of this case could have been decided in favor of the Plaintiff. Despite the frequency with which the circuit courts of Virginia are presented with cases of medical negligence in our state-run hospitals, the cases often turn on such minute and specific facts that it can be difficult to find consistency. The case law in this context demonstrates that different judges presented with identical facts could reach different conclusions under *James* and its progeny.

Moreover, the Court is troubled that a nurse in a private hospital across the street from a state-run hospital, faced with the same allegations of negligence as Hagaman, would be unable to enjoy the protection of sovereign immunity merely because they work in a different building. However, this situation is one created by the General Assembly and the Supreme Court of Virginia, and the trial court in the instant matter is powerless to change this legal reality.

Here, the Court finds that the facts and the law favor Hagaman's sovereign immunity arguments, and, thus, the Plea is granted as to her. Accordingly, the Plaintiff's outstanding motions *in limine* are rendered moot and dismissed.