PRESENT: Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Stephenson, S.J.

CARL F. McCLOSKEY, ADMINISTRATOR OF
 THE ESTATE OF JOHN W. McCLOSKEY

                                        OPINION BY
v.  Record No. 040264   SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                     November 5, 2004
TIMOTHY KANE, M.D.

            FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                    Thomas H. Wood, Judge

     In this appeal, we decide whether the trial court erred in

dismissing the plaintiff's negligence action based upon the

doctrine of sovereign immunity.

                                I

     Carl F. McCloskey, Administrator of the Estate of John W.

McCloskey (the Plaintiff), filed a wrongful death action against

Timothy Kane, M.D. (the Defendant), alleging that John W.

McCloskey (the Decedent) died "as a result of the negligence

. . . of [the Defendant], who committed malpractice while

treating [the Decedent]."  The Defendant filed a plea of

sovereign immunity.  By order entered November 7, 2003, the

trial court granted the Defendant's plea and dismissed the

matter with prejudice.  We awarded the Plaintiff this appeal.

                               II

                                A

     We will summarize the Plaintiff's negligence claim

primarily from a reading of his motion for judgment.  On

December 15, 1994, the Decedent, aged eighteen years, was involuntarily committed to Western State Hospital (Western State).  He was suffering from clinically diagnosed bipolar disorder.  At some time during his three days as a patient at Western State, the Decedent experienced a violent assault, likely through his rectum.  On the morning of December 18, the Decedent was found lying on the floor, vomiting and complaining of severe abdominal pain and of constipation.  The nurse on duty notified the Defendant, who was the physician on duty at the time of the Decedent's complaints.

The Defendant did not examine the Decedent at that time, but ordered a suppository.  At noon that day, the Defendant was informed that the Decedent's complaints persisted and that he had vomited his own feces.  The Defendant examined the Decedent and ordered an x-ray.

The Defendant did not have a radiologist read the x-ray.  Instead, the Defendant read the x-ray and failed to note the presence of free air in the Decedent's abdominal cavity.  The Defendant ordered a soapsuds enema, which worsened the Decedent's condition.

Later that day, the Defendant was informed that the Decedent's condition had not improved.  Thereupon, the Defendant decided to transfer the Decedent to the University of Virginia Medical Center at Charlottesville (UVA Medical Center).  The

Decedent was transported, contrary to Western State's policy, in a security van rather than an ambulance.

The doctors at the UVA Medical Center promptly diagnosed the Decedent's condition, but, by that time, the Decedent's body was so infected and weak that he could not recover. The Decedent lapsed into a coma, struggled for 14 months, and finally died on February 24, 1996.

B

Western State is a state mental hospital, operated under the authority of the Department of Mental Health, Mental Retardation and Substance Abuse Services (the Department) pursuant to Title 37.1 of the Code of Virginia. Western State is "operated by the Department . . . to provide mental health care to all eligible patients regardless of [their] ability to pay for such care."

The Defendant was a "physician extender," classified as a "P-14" doctor, meaning he worked part-time, was paid hourly, and received no state benefits. His job was "to help the psychiatrists with the medical problems." He was not a psychiatrist; rather, he was a resident in psychiatry at the University of Virginia.

The Defendant was on duty for weekend shifts to respond to emergent non-psychiatric medical situations. He requested the on-call weekend shifts that suited his schedule, and he could

choose to work between one and four 12- or 24-hour shifts a month.

While on duty during weekend shifts, the Defendant was not consistently engaged in treating patients, and he was permitted to sleep when not seeing patients. Conversely, full-time, "P-3" doctors at Western State worked a 40-hour week and were not allowed to sleep at work.

The Defendant was not authorized to hire or fire any of Western State's employees. He did not have access to the state employee grievance procedure, as did the full-time, "P-3" doctors. The details of his schedule were not dictated or controlled by Western State, and he was not directly supervised or controlled by anyone at Western State. Western State policy required the Defendant to see a patient when requested to do so by a nurse.

At the time the Defendant was treating the Decedent, Western State "had 15 or 16 psychiatrists who would have been responsible for overall [psychiatric] care." Western State also "had two internists assisted by four or five physician extenders to help the psychiatrists with the medical problems."

### III

In determining whether a state-employed physician is entitled to the protection of sovereign immunity, a court must apply the four-factor test first set forth in James v. Jane, 221

4

Va. 43, 282 S.E.2d 864 (1980). Those four factors are: (1) the nature of the function performed by the employee, (2) the extent of the state's interest and involvement in that function, (3) the degree of control exercised by the state over the employee, and (4) whether the alleged negligent act involved the use of judgment and discretion. Id. at 53, 282 S.E.2d at 869. Accord Lee v. Bourgeois, 252 Va. 328, 331, 477 S.E.2d 495, 497 (1996).

Both parties in the present case agree that James is controlling. They disagree, however, with respect to its application to the facts presented.

The Plaintiff contends that Western State's primary function is to provide psychiatric care to its patients and that the Commonwealth's interest therein is great. The Plaintiff further contends that the Defendant's primary function was to provide limited medical care, as opposed to psychiatric care, to Western State's patients. This function, the Plaintiff asserts, is only incidental to Western State's primary function, and, therefore, the Commonwealth's interest and involvement therein is slight. Additionally, according to the Plaintiff, the Commonwealth exerted little control over the Defendant.

On the other hand, the Defendant contends that Western State's psychiatric and medical functions are inextricably linked, and, therefore, the Commonwealth had a substantial interest in the Defendant's actions. Further, the Defendant

5

asserts that Western State had substantial control over the Defendant.

IV

We limit our discussion of James to the factor involving the degree of control because we find it dispositive in the present case.  In James, the defendant-physicians were employed by the University of Virginia to teach in the Medical School and to practice their specialties as attending physicians at the University Hospital.  Their duties were two-fold:  to teach and to attend patients.  221 Va. at 50, 282 S.E.2d at 867.  With regard to the physician-patient relationship, we said that,

> when the physician agrees to treat or operate on a certain patient, although his employment by the University makes possible the arrangement, the relationship becomes the personal and confidential one of doctor and patient, not the Commonwealth of Virginia and patient.  The physician owes his best professional efforts on behalf of the patient, and the patient expects, and has a right to expect, the same care and attention from the physician that he would receive if he were in a private hospital and the physician in private practice.  The exercise by the attending physician of his professional skill and judgment in treating his patient, and the means and methods used, from the very nature of things, are not subject to the control and direction of others.

Id. at 50-51, 282 S.E.2d at 867-68.  We have also said that the greater the control of an employee's actions by the Commonwealth, the greater the likelihood of immunity.  Lohr v. Larsen, 246 Va. 81, 88, 431 S.E.2d 642, 646 (1993).

V

6

In the present case, the record does reveal that Western State exercised some control over which patients the Defendant would see because the Defendant was expected to see patients that the nurses requested him to see.  Otherwise, however, the Defendant was free to exercise his judgment and discretion about seeing patients, and he was not under anyone's supervision.  Indeed, as we said in James, "[t]he exercise by the attending physician of his professional skill and judgment in treating his patient, and the means and methods used, from the very nature of things, are not subject to the control and direction of others." 221 Va. at 50-51, 282 S.E.2d at 867-68.  We conclude, therefore, that the Commonwealth's control over the Defendant was, at best, slight.[1]

## VI

We hold, therefore, that the Defendant is not entitled to the protection of the doctrine of sovereign immunity from liability for his alleged negligent acts in treating the

---

[1] In Lohr v. Larsen, we found a state-employed public-health physician entitled to the protection of the doctrine of sovereign immunity.  246 Va. at 88, 431 S.E.2d at 646.  In doing so, however, we said that the Commonwealth's paramount interest was the provision of quality medical care to economically disadvantaged citizens, and we held that the physician's function as a public-health physician and his exercise of discretion were essential to the Commonwealth's objective of preserving the public health.  Id. at 86, 431 S.E.2d at 645.  We further held that the Commonwealth's control and direction of the physician was great.  Id. at 88, 431 S.E.2d at 646.  Lohr, therefore, is distinguishable from the present case.

Decedent, and the trial court erred in sustaining the Defendant's plea of sovereign immunity.[2]  Accordingly, we will reverse the trial court's judgment and remand the case for further proceedings.

Reversed and remanded.

_____

[2] The Plaintiff also claims that the trial court "erred in determining that [the Defendant] was a state employee as a matter of law rather than sending the issue to a jury."  If the Defendant were an independent contractor, he would not be entitled to sovereign immunity.  See Atkinson v. Sachno, 261 Va. 278, 283-84, 541 S.E.2d 902, 905 (2001).  For the purpose of this opinion, however, we have accepted the Defendant's contention that he was an employee of the Commonwealth and assumed, without deciding, that he was not an independent contractor.