# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Alesia G. White,
Administrator
of the Estate of
Damien Jamal Glover,
deceased

v.

Rachel Simon et al.

December 4, 2013

Case No. 2012-229

BY JUDGE EDWARD L. HOGSHIRE

This medical malpractice action arose from the allegedly negligent actions of Defendant Rachel Simon, R.N., which are claimed to have led to the wrongful death of Plaintiff's decedent, Damien Jamal Glover. The issue before the Court is Nurse Simon's special plea of sovereign immunity, which, if granted, would limit Plaintiff's right of recovery. *Whitley v. Commonwealth*, 260 Va. 482, 493, 538 S.E.2d 296, 302 (2000). As the moving party, the Defendant has the burden of proving immunity is warranted by the evidence. *Id.* After careful consideration of the pleadings, stipulations, and legal memoranda of counsel, the Court, for reasons set forth below, will deny Nurse Simon's plea of sovereign immunity.

## Statement of Facts

The statement of facts is derived from the amended complaint, party stipulations, and deposition excerpts.

The case concerns a brain injury sustained by Damien Jamal Glover, an eighteen-year-old college student, on the morning of November 16, 2010,

while he was under the care of Nurse Rachel Simon. Amended Complaint ¶¶ 14, 18-20. At the time of his injury, Glover was a patient on Thoracic Cardiovascular Post-Operation Unit ("TCVPO") at The University of Virginia Medical Center ("UVA Medical Center"). Stip. ¶ 5.

Initially, Glover had been admitted to UVA Medical Center on November 4, 2010, with a diagnosis of dilated cardiomyopathy and, on November 10, 2010, he received a left ventricular assist device. Amended Complaint ¶¶ 8, 9. Following that procedure, Glover was placed in TCVPO and he was alert but confused to such an extent that medication and restraints were required to sedate him. *Id.* ¶ 10. On the day of the incident, Nurse Simon was assigned to provide nursing care to Glover on a one-to-one basis on the date of the incident and she was not in the process of teaching any students or researching. Stip. ¶ 8; Simon Dep. 23, 44, 86-88. Moreover, Nurse Simon was not in training or a student at the time. *Id.*

Because Glover was agitated, Nurse Simon decided to provide him sedation medicine Ativan. Amended Complaint ¶ 12. After administering the medication, it is alleged that Nurse Simon placed Glover on a bedpan and negligently left him unattended. *Id.* ¶¶ 13, 14. Glover was next seen by Dr. Sandeep Kamath who discovered an unresponsive Glover on the floor beside his bed in a pool of blood. Amended Complaint ¶ 15. As a result of the blood loss, from the alleged fall, Glover suffered the injury to his brain. *Id.* ¶¶ 17-18. The suit is a result of the injuries suffered in this incident.

As of November 16, 2010, Nurse Simon was a registered nurse, licensed to practice in the Commonwealth of Virginia. Stip. ¶ 1. She only received compensation from her salary provided by the Commonwealth, and said compensation was not dependent on the number of patients she treated. Stip. ¶¶ 11-12. When it came to patients, it is stipulated that Nurse Simon did not exercise any control over the number and identity of the patients she treated; instead, that was decided by the TCVPO. Stip. ¶ 15. Moreover, Nurse Simon was not involved in any aspect of the billing process, and she was not able to forgive fees for the patients. Stip. ¶ 13. Finally, in the exercise of her powers, Nurse Simon did have discretion to make judgment calls, but she was subject to the direction and control of those above her. In addition, she was required to follow the rules and regulations of the TCVPO. Stip. ¶¶ 17, 18.

## Question Presented

Is Nurse Simon, a registered nurse who provided medical care to patients in the Thoracic Cardiovascular Post-Operative Unit at the University of Virginia Medical Center, entitled to the protection of sovereign immunity?

*Legal Analysis*

In order to determine whether an employee of the Commonwealth of Virginia is entitled to protection under the doctrine of sovereign immunity, it is necessary to consider the four-factor test articulated in *James v. Jane* and further elaborated in *Messina v. Burden,* 228 Va. 301, 321 S.E.2d 657 (1984). *McCloskey v. Kane,* 268 Va. 685, 689, 604 S.E.2d 59, 61 (2004). The four factors to consider include:

(1) The nature of the function performed by the employee;

(2) The extent of the state's interest and involvement in that function;

(3) The degree of control exercised by the state over the employee; and

(4) Whether the alleged negligent act involved the use of judgment and discretion.

*Messina,* 228 Va. at 313, 321 S.E.2d at 663. The disagreement between the parties centers on whether or not all four factors have been satisfied to provide Nurse Simon with sovereign immunity. In order to determine whether or not sovereign immunity is appropriate in this case, it is necessary to consider each of the four factors.

## A. *The Function Performed and the State's Interest in That Function*

The first two factors are typically considered together because of how related and interdependent they are. *Hey v. University of Va. Health Servs. Found.,* 80 Va. Cir. 360, 363, 2010 Va. Cir. Lexis 168 (Charlottesville 2010); *see also Lohr v. Larson,* 246 Va. 81, 85, 431 S.E.2d 642, 644; *Gargiulo v. Ohar,* 239 Va. 209, 213, 387 S.E.2d 787, 789-90 (1990). This interdependence stems from the fact that, when the function of a government employee is essential to the significant governmental objective, there is a presumption in favor of granting immunity. *Roush v. West,* 83 Va. Cir. 407, 413 (Charlottesville 2011) (quoting *Lohr,* 246 Va. at 85, 431 S.E.2d at 644). Conversely, if the employee's function is only marginally related to the governmental objective and the government's objective is slight, immunity is disfavored. *Lohr,* 246 Va. at 85, 431 S.E.2d at 644.

In the present case, Nurse Simon argues that her specialized function of working at the TCVPO was essential in furthering the operation of a good medical school at the University of Virginia. More specifically, Nurse Simon asserts that her function at the TCVPO at UVA is essential because it is a specialized area where the nurses are trained to provide critical care nursing services like those in *Houchens v. Rector & Visitors of Univ. of Va.,* 23 Va. Cir. 202 (Charlottesville 1991) ("In most cases . . . the patients come from surgery in close to, if not critical, condition. While in the TCVPO unit, patients are closely monitored by nurses who have received specialized training and are qualified to provide critical care nursing services."). The claim that follows is that this function is in furtherance of the significant

government interest of providing specialized nursing care to patients to cultivate their specialized training. In addition, Nurse Simon goes on to argue that these specialized functions in the TCVPO are essential to the broader paramount objective of the Commonwealth which is to protect, improve, and preserve the public health of Virginia patients like Mr. Glover. Therefore, the argument is that her function serves a vital state interest that should provide her with the protection of sovereign immunity.

In a variety of cases, the Supreme Court of Virginia has noted that the Commonwealth has a "paramount interest" in:

> the operation of a medical school and training physicians to teach in and to administer the school, *James*, 221 Va. at 54, 282 S.E.2d at 870, the thorough training and maintaining of a pool of medical specialists skilled in a particular discipline, *Gargiulo*, 239 Va. at 213, 387 S.E.2d at 790, and the provision of quality medical care for citizens in economically disadvantaged areas who are otherwise unable to secure such services from the private sector. *Lohr*, 246 Va. at 86, 431 S.E.2d at 645 (finding the provision of medical services to the poor to be integral to "the protection, improvement, and preservation of the public health [which is] essential to the general welfare of the citizens of the Commonwealth" (quoting Va. Code § 32.1-2)).

*Roush v. West*, 83 Va. Cir. at 413-14. However, these significant interests are distinguished from instances where the nurse or doctor was involved in the treatment of a specific patient because the Commonwealth only has a slight interest in said activity. *James*, 221 Va. at 54, 282 S.E.2d at 870; *see also Gaines v. Health Servs. Found.*, 80 Va. Cir. 336, 343, 2010 Va. Cir. LEXIS 176 (Charlottesville 2010) (finding that the primary function of several nurses employed at the University of Virginia Hospital was the provision of patient care and holding them not entitled to sovereign immunity); *Houchens v. Rector & Visitors of the Univ. of Va.*, 23 Va. Cir. 202, 210-12, 1991 Va. Cir. LEXIS 84 (Charlottesville 1991) (denying sovereign immunity to highly specialized nurses whose primary function was patient care). Sovereign immunity is usually denied in instances where the primary function of the defendant is individual patient care because that function is not one in which the Commonwealth has a vital interest.

In the present case, Nurse Simon's core function was to provide medical care to an individual patient, Glover, and was not in furtherance of any vital interest of the Commonwealth. While Nurse Simon was involved in a specialized function, which she was specifically trained to perform, she was not involved in supervising, teaching, or researching during the period in which she provided treatment to Glover. Stip. ¶¶ 5, 8. Moreover, she herself was neither a trainee nor a student on November 16, 2010. *Id.*

Finally, on the day of the incident, Nurse Simon was assigned to provide one-on-one care to Glover and that was her primary concern. Stip. ¶ 8; Simon Dep. 23, 44, 86-88. In reviewing the facts of this case, it appears that Nurse Simon's actions were not essential to any of the paramount interests discussed above and are in fact more consistent with individual patient care. As stated in *James*, the Commonwealth has a general interest and concern with patient care, but it does not have a *significant* interest in said activity, which is required for the invocation of sovereign immunity. *See James*, 221 Va. at 54, 282 S.E.2d at 870 (emphasis added).

## B. *Degree of Control Exercised by the State*

The next factor to consider, in order determining whether Nurse Simon is entitled to the veil of sovereign immunity is the extent of control exercised by the state over her. A high level of control weighs in favor of immunity. *Lohr*, 246 Va. at 88, 431 S.E.2d at 646; *James*, 221 Va. at 54, 282 S.E.2d at 870. Conversely, a low level of control weights against immunity. *Lohr*, 246 Va. at 88, 431 S.E.2d at 646.

In the present case, the Commonwealth did exercise substantial control over Nurse Simon's activities. Unlike the physicians in *James v. Jane*, Nurse Simon was only paid a salary by the Commonwealth, the salary was not based on the number of patients she saw, and she had no discretion to choose the patients that were admitted or the ones whom she would see. Stip. ¶¶ 10-12, 15, 16. In addition, she had no input regarding the billing of patients because she did not bill patients specifically for her services, and she could not forgive fees for treatment provided. Stip. ¶ 13. Finally, Nurse Simon was subjected to rules and regulations established by TCVPO when it came to patient care procedures. Stip. ¶¶ 18. As a result of these considerations, the high level of control exercised by the Commonwealth does support the granting of immunity.

## C. *The Use of Judgment and Discretion*

It is also necessary to consider the level of judgment and discretion used by Nurse Simon in the treatment of Mr. Glover. High levels of discretion exercised by a state employee, however, weigh in favor of immunity. *Lohr*, 246 Va. at 88, 431 S.E.2d at 646. Nevertheless, the amount of discretion is not always determinative. *James*, 221 Va. at 53, 282 S.E.2d at 869.

While Nurse Simon was subject to the direction and control of those above her as well as the rules and regulations of the TCVPO, she was permitted to exercise discretion when it came to specific patient care with regards to monitoring a patient on a bed pan to minimize the risk of falling. Stip. ¶¶ 17, 18. This case is similar to *Rogers v. Commonwealth*, where the court held that, "[w]hile the defendants are under the supervision of more senior nursing staff, the supervision is not constant, and the defendants'

training equips them to make independent judgments about how to carry out their duties throughout each day." 38 Va. Cir. 217, 220 (Albemarle County 1995). As evidenced in the facts of the present case, deciding how to monitor an agitated patient on a bedpan in order to prevent serious injury involves judgment and discretion. This finding weighs in favor of granting immunity.

## Conclusion

In conclusion, this Court finds that Nurse Simon has not demonstrated that her functions were in furtherance of a paramount state interest and this factor weighs so heavily against granting her the protection of sovereign immunity that her plea of sovereign immunity must be denied.